Bevain JOHNSON, Plaintiff,

v.

ALL AMERICAN LIFE INSURANCE COMPANY, Defendant.

No. 93-281-CIV-T-17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 18, 1993.

Bevain Johnson, pro se.

Michael J. Trentalange, Michael J. Trentalange, P.A., Tampa, FL, for plaintiff.

Michael D. Allweiss, Tew, Zinober, Barnes, Zimmet & Unice, Clearwater, FL, for defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The motion was filed June 15, 1993. No response thereto was filed.

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of a summary judgment after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

## FACTS

During July, 1992, Mr. Robert Ohanesian and Mr. Stuart Laake met with Plaintiff and her husband concerning what insurance needs they might have. As a result of this meeting, Plaintiff and her husband decided to apply for a life insurance policy. The policy would provide death benefits to Plaintiff's husband and child in the event of her death. The policy would also provide death benefits to Plaintiff and her child in the event of the death of Plaintiff's husband.

In an effort to obtain this coverage, Mrs. Johnson and her husband signed an application and gave a check in the amount of $48.00 to Mr. Ohanesian. The check was a deposit and was intended to be put towards their premiums in the event the life insurance policy was issued.

Mr. Ohanesian turned the applications and the deposit check in to Ms. Theresa Grimsley, a customer service representative at HSN Insurance, Inc. Ms. Grimsley then mailed the insurance applications to All American's office in Chicago. As a result of the standard evaluation and processing of insurance applications, Ms. Grimsley received a written request from All American which requested Plaintiff's husband to submit to a full physical exam and also to provide a urine specimen. In the initial application process it had been noted that Mr. Johnson was born with a heart murmur and, although he was not currently on any medication or receiving other treatment for the condition, All American's senior underwriter, Ms. Genevieve Wesolowski, directed the physician who was to examine Mr. Johnson to pay special attention to Mr. Johnson's heart murmur.

Subsequent to the request for a physical exam and urine specimen, Plaintiff's husband informed both Mr. Ohanesian and Mrs. Denson, an employee of the firm responsible for arranging the medical exam, that he refused to submit to the physical exam, and that he refused to submit a urine specimen. Accordingly, he communicated with Mr. Ohanesian and told Mr. Ohanesian that he wished to withdraw his application for insurance and wanted his $48.00 deposit returned.

In accord with Mr. Johnson's wishes, Mr. Ohanesian contacted Ms. Grimsley and told her to withdraw Mr. Johnson's application and return his deposit to him. On August 21, 1992, Ms. Grimsley sent a memo to Ms. Wesolowski, All American's underwriter, instructing her to withdraw Mr. Johnson's application and return his deposit in full.

Ms. Wesolowski sent a memo to Ms. Grimsley on August 24, 1992, confirming that the application had been withdrawn at the applicant's request and the deposit refunded. There was no further communication regarding the Johnsons' application for life insurance until the beginning of September, 1992, when Plaintiff called Mr. Ohanesian and asked him if he had been able to locate

another insurance company that would provide the Johnsons' desired coverage without requiring Mr. Johnson to submit to a medical examination. Mr. Ohanesian told Plaintiff he had not been able to find such a company and then Plaintiff told him that her husband had been killed on August 24, 1992.

All American never issued an insurance policy on Plaintiff's husband because he had refused to submit to the required physical exam and provide the required urine specimen. Further, before the application process was completed, Mr. Johnson voluntarily withdrew his application for coverage and demanded the return of his deposit.

Following her husband's death, Plaintiff sued All American for breach of an insurance contract and intentional infliction of emotional distress.

### DISCUSSION

The Court will first discuss several general concepts regarding the admissibility of Defendant's affidavits in support of its motion for summary judgment. Since Plaintiff's husband is deceased and it is his alleged contract with All American that is the basis for Plaintiff's claim, it is necessary to establish that Defendant's supporting affidavits are admissible against the proposition that a contract was formed.

■ It was held in *Allstate Insurance Company v. Doody,* 193 So.2d 687 (Fla. 3d DCA 1967) that agents and other similar servants create a "special class of exceptions to the general rule that a witness interested in the subject of the suit is not competent to testify on the side of his interest." *Id.* at 689. It has been established that Mr. Ohanesian, Ms. Grimsley, Ms. Denson, and Ms. Wesolowski are agents and servants of All American. As such they fall into the special exception category that the *Doody* court created. As members of this class, and consistent with the *Doody* opinion, the four affiants mentioned above are not barred from acting as witnesses concerning any transactions or communications to which they were a party involving the deceased Mr. Johnson.

■ Section 90.803(6), Fla.Stat., also provides a business record exception to evidence admitted against a deceased person. Under this statute, the business records (application, memos, etc.) described in the sworn affidavits of both Ms. Grimsley and Ms. Wesolowski are admissible.

■ Having established that the evidence Defendant has offered in its behalf is admissible, it is necessary to next consider Plaintiff's breach of contract claim. It is axiomatic that in order to breach a contract, a contract must have been in existence. *Bankers and Shippers Ins. Co. v. Phoenix Assurance Co.,* 210 So.2d 715 (Fla.1968) establishes that a life insurance policy is a contract subject to the principles of contract law which include the requirements that an offer be made and accepted. Therefore, in order to prevail on a breach of contract claim, a plaintiff must prove that an insurance policy (contract) had been formed and that it was in effect at the time the alleged breach took place. This principle is clearly stated in *Loewer v. New York Life Insurance Company,* 773 F.Supp. 1518 (M.D.Fla.1991).

■ In consideration of these principles of law, it is noted that Plaintiff has alleged nothing in furtherance of her claim that a contract existed between Mr. Johnson and All American other than the fact that she and her late husband signed applications for policies and submitted those along with a $48.00 deposit to Mr. Ohanesian to be forwarded to Defendant All American. It is helpful to look at the signed application itself in support of Defendant's claim that a contract was never formed between Mr. Johnson and All American. A copy of the form signed by Mr. Johnson clearly states at the top that it is an APPLICATION for life insurance. Further, it also clearly states directly above the signature line that "(t)his application is not a contract of insurance. A contract of insurance will take effect only if a policy is issued on this application and the first premium is paid in full ... during the lifetime of all proposed insureds ..."

Further, sworn affidavits of both Mr. Ohanesian and Ms. Wesolowski state that All American never issued a life insurance policy covering Mr. Johnson. The reasons for the refusal of coverage are the result of Mr.

Johnson's unwillingness to subject himself to a free medical exam or provide a urine specimen, and his own voluntary withdrawal of his application and demand of return of his deposit.

The Court finds that Plaintiff is completely unable to contradict the facts listed above and prove to this Court that in fact an insurance contract was formed between Plaintiff's husband and Defendant. Therefore, on this issue, Defendant has met its burden of proof in favor of summary judgment for Defendant.

■ Turning to Plaintiff's claim for intentional infliction of emotional distress, we must consider what elements are necessary to establish a viable claim. These elements have been laid out for us in *Dominguez v. Equitable Life Assurance Society of the United States,* 438 So.2d 58 (Fla. 3d DCA 1983). In this case, the Court stated that the plaintiff must prove that the wrongdoer's conduct was intentional or reckless, the conduct was outrageous in that it went "beyond all bounds of decency, and … (was) utterly intolerable in a civilized community", the conduct caused Plaintiff's emotional distress, and the "emotional distress was severe." *Id.* at 59.

■ There is nothing in the record to indicate that Defendant followed anything other than its standard operating procedures in handling Mr. Johnson's application for life insurance. Defendant accepted the application and deposit and in processing the application requested Defendant submit to a medical exam. Certainly this is not unheard of in the world of insurance. In this case, Defendant even offered to pay for the exam. Yet Plaintiff's husband refused to complete this portion of the application process and instead chose to withdraw his application. Upon receipt of his request, All American promptly ceased processing the application and reimbursed Plaintiff and her husband in the full amount of the deposit they had made.

It is impossible for this Court to see how such prompt and courteous handling of Mr. Johnson's application and his own decision to terminate the application can be construed as either reckless or as having been handled in such a way as to intentionally cause Plaintiff emotional distress. Nor can it be seen how All American's refusal to pay life insurance benefits for a person who was not insured by them is either reckless or evidence of intentional conduct to cause emotional distress. If such a refusal could be regarded as such there would be no reason for anyone to pay premiums on life insurance. Individuals could simply wait until a family member died and then claim benefits from the insurance company of their choice. The company would have no choice but to pay the claimant or face legal action for intentional infliction of emotional distress.

Certainly, it is both sad and unfortunate that Mr. Johnson died. However, just as this Court cannot find a contract where none existed, this Court also cannot find that the intentional conduct element of an infliction of emotional distress claim has been met by Defendant's failure to pay benefits on a contract not in existence. Nor can this conduct be viewed as outrageous. Standard business practice dictates that companies are responsible for the contracts they enter into, but not for those to which they are not a party. All American had a legal right not to pay a claim for benefits they did not owe.

Finally, Plaintiff has failed to establish that she suffered any emotional distress other than by merely claiming that she did. She chose not to respond to Defendant's motion for summary judgment, thereby foregoing an opportunity to allege further facts in support of her claim.

The Court is satisfied that no factual disputes remain with respect to either the claim for breach of contract or the claim for intentional infliction of emotional distress. Accordingly, it is **ORDERED** that the Motion for Summary Judgment of Defendant All American be **granted,** and the Clerk of Court enter a final judgment in favor of Defendant.

**DONE AND ORDERED.**