**John BLAND, an individual, and Margaret Bland, his wife, Plaintiffs,**

v.

**FREIGHTLINER LLC, a foreign corporation, Defendant.**

**No. 8:01–CV–1484–T–17–EAJ.**

United States District Court, M.D. Florida, Tampa Division.

April 15, 2002.

---

Gregory Keith Atkinson, Peterson & Myers, P.A., Lakeland, FL, for Plaintiffs.

Myron Shapiro, Kenn W. Goff, Herzfeld & Rubin, Miami, FL, for Defendants.

### *ORDER ON DEFENDANT'S MOTION TO DISMISS*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant, Freightliner LLC's (hereinafter "Freightliner") Motion to Dismiss for Failure to State Cause of Action. (Dkt. 6) and response thereto (Dkt. 7).

### *STANDARD OF REVIEW*

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a

plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim [that] will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley*, 355 U.S. at 47, 78 S.Ct. 99, (citing Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232, 233 (M.D.Fla.1995). "Any exhibit attached to [the] complaint 'becomes a part thereof for all purposes.' Accordingly [the] court may utilize [attached exhibits] in considering a motion to dismiss." *DiDomenico v. New York Life Ins. Co.*, 837 F.Supp. 1203, 1205 (M.D.Fla.1993) (citing Fed.R.Civ.P. 10(c)). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

In addition, a court must accept the plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

**BACKGROUND**

The following allegations, taken from the complaint and its attached exhibits, are considered true for the present purpose of deciding whether to dismiss Plaintiffs' complaint. *See Beck v. Deloitte et al.*, 144 F.3d 732, 735 (11th Cir.1998). On or about April 19, 1999, Plaintiffs, John Bland and Margaret Bland (hereinafter "the Blands"), purchased a new 1999 Freightliner FL60, Showhauler 204 (hereinafter "Freightliner Vehicle") from an Ohio truck dealership, Sweeney Truck Sales d/b/a Western Ohio Freightliner (hereinafter "Sweeny Truck Sales") for ninety-one thousand eight hundred seventy one dollars ($91,871.00). The Blands financed the Freightliner Vehicle through a third party consumer installment loan and are currently submitting monthly payments to the third party creditor.

Soon after driving their newly purchased Freightliner Vehicle, the Blands soon began experiencing defects, including faulty transmission and cruise control operations.[1] For each discovery, the Blands reported the defects to various Freightliner dealers around the country, requesting the repair of the newly purchased Freightliner Vehicle. The defects and subsequent repair requests occurred on twenty-one separate occasions. To no avail, the mechanics attempted to properly restore the Freightliner Vehicle to an operable state. On January 24, 2001, the Blands notified Freightliner, through one of its dealerships, of their intent to rescind the purchase of the Freightliner Vehicle. At some point thereafter, the Blands initially filed a three-count lawsuit in state court requesting equitable and legal relief to compensate for the losses flowing from the

---

1. The Blands, in paragraph seven of their complaint, in summation allege the following defects: (1) chassis vibration; (2) faulty acceleration; (3) faulty transmission; (4) faulty alignment; (5) faulty air-conditioning system; (6) faulty cruise control; (7) water drain failure.

defective Freightliner Vehicle.[2] The case was removed to federal court based upon diversity of citizenship. The Blands seek to rescind the contract for Freightliner's failure to cure the defects. Alternatively, the Blands seek to revoke the acceptance of their new motor vehicle pursuant to Section 672.711, Florida Statutes (2001). Finally, the Blands seek monetary damages for breach of express warranty pursuant to the terms of the manufacturer's warranty that Freightliner provided.

In response, Freightliner, pursuant to the Federal Rules of Civil Procedure 12(b)(6), filed its Motion to Dismiss, on all three counts, claiming the Blands failed to state a claim upon which relief could ·be granted. Alternatively, Freightliner requests the case be transferred to a different forum, because it claims a lack of jurisdiction pursuant to Section 47.051, Florida Statutes. This Court will take up each count and the choice of venue argument accordingly.

### DISCUSSION

### I. Plaintiffs' Complaint

### a. Count I—Rescission

■ "The rescission of contract 'amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination...'" *Wilson v. Par Builders II, Inc.*, 879 F.Supp. 1187, 1190 (M.D.Fla.1995) (quoting *Black's Law Dictionary*, 5th Ed.) *See also Borck v. Holewinski*, 459 So.2d 405 (Fla. 4th DCA 1984) (stating the effect of rescission is to render the contract abrogated and of no force and effect from the beginning). "The rescission 'may be effected by mutual agreement of parties; by one of the parties declaring rescission of the contract,

without the other if a legally sufficient ground therefore exists; or by applying to courts for a decree of rescission.'" *Wilson*, 879 F.Supp. at 1190. "It is an action of an equitable nature." *Id.* Under Florida law, rescission may be granted where a party breaches a term that is an essential part of the bargain between contracting parties, such that a contract is essentially destroyed. *Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement System of the City of Detroit*, 50 F.3d 908 (11th Cir.1995).

■ The fundamental requirements necessary to state a cause of action for rescission of contract are: (1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party to the contract of such rescission; (5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law. *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965).

■ The Plaintiffs have met the requirements to sustain the count for rescission.

### 1. Relationship of the Parties

■ In order to maintain an action for rescission of contract, the parties to the lawsuit must lie in contractual privity. *Sumitomo Corp. of America v. M/V Saint Venture*, 683 F.Supp. 1361, 1369 (M.D.Fla.

---

**2.** The Blands, in paragraph twelve of their complaint, seek damages for: (1) repairs; (2) sleeping accommodations; (3) meals; (4) missed employment/work opportunities; (5) loan finance charges; (6) insurance costs; (7) improvements to the vehicle.

1988). Privity of contract is that connection or relationship which exists between two or more contracting parties. *Id.*

The relationship between the Blands and the dealer, Sweeny Truck Sales, is clear and indisputable. The two respective parties lie in contractual privity. However, to determine whether the Blands and the manufacturer, Freightliner, lie in privity merits a closer examination.

The Blands allege, in their complaint, that Sweeny Truck Sales acted as Freightliner's agent. In the context of vehicular-dealer-manufacturer agency relationships, *Foote v. Green Tree Acceptance, Inc.* is instructive. 597 So.2d 803 (Fla. 1st DCA 1991). In *Foote*, the court examined the relationship between a motor vehicle purchaser, a motor vehicle dealer, and a motor vehicle manufacturer. The court held that a sufficient nexus existed between the purchaser and the manufacturer. *Id.* at 805. The purchaser in *Foote* was required, according to the warranty agreement, to contact the dealer for vehicular repairs. *Id.* at 804. If the dealer failed to repair the defective vehicle, the warranty required the purchaser to contact the manufacturer to allow the manufacturer to make a repair attempt. *Id.* After repeated attempts, the dealers failed to repair the vehicle. *Id.* Instead of contacting the manufacturers, the purchasers opted to revoke acceptance of the vehicle. The manufacturer sought summary judgment, claiming the failure to contact the manufacturer prohibited the revocation. *Id.* The purchasers claimed the dealer acted as the manufacturer's agent and that the numerous contacts with the dealer served as notice to the manufacturer. *Id.* The court allowed the jury to determine whether the issue of agency existed. *Id.* at 805.

While the Blands did not directly purchase the Freightliner Vehicle in question from the manufacturer, Freightliner, the Blands have sufficiently shown, for the purposes of this motion, a relation between Freightliner and themselves. The Blands allege that the dealer, Sweeny Truck Sales, acted as Freightliner's agent. The Blands couch their agency theory on a number of factual allegations. In the attached sales contract, the dealer identifies Freightliner when waiving liability for failure to deliver the vehicle. In the same sales contract, a signature line appears requiring that a dealer or **Authorized Representative** sign the document. In another portion of the complaint, the Blands allege that the owner's warranty information requires them to promptly return the vehicle to an authorized Freightliner dealer for repair. In other portions of the warranty, Freightliner is used almost interchangeably with Sweeny Truck Sales. Essentially, the Blands suggest that, without Freightliner, Sweeny Truck Sales would cease to exist. The Blands have sufficiently satisfied, for this motion, the first requirement for rescission.

**2. The Making of the Contract**

In Florida, courts have adopted the objective theory of contractual intent. To determine the creation and scope of a contract, courts must not "depend on the agreement of two minds in one intention, but on the agreement of two sets of external signs." *Cheverie v. Geisser*, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001).

The Blands have sufficiently alleged a valid contract existed when they purchased the Freightliner Vehicle for $91,871.00. They evidence the sale through an attached invoice which serves as the instrument for which the purchase was transacted and consummated.

**3. Existence of an Equitable Breach**

"Impossibility of performance" and "frustration of purpose," as grounds

for rescission of contract, are separate and distinct. *See Crown Ice Machine Leasing Co.*, 174 So.2d 614 at 617–618. " 'Impossibility of performance' refers to those factual situations where purposes for which the contract was made, have, on one side, become impossible to perform." *Id.* at 617. " 'Frustration of purpose' refers to the condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance of the other party." *Id.*

The Blands pled that they purchased the vehicle for their own personal use. This personal use was the benefit of the bargain. In the motor home context, such personal uses include traveling, living, cooking, and eating in the vehicle. *See Parsons v. Motor Homes of America, Inc.*, 465 So.2d 1285, 1292 (Fla. 1st DCA 1985). There are allegations that support the frustration of the bargained for benefits. Initially, the Freightliner Vehicle served its intended purpose. Soon thereafter, the defects limited the vehicle's use, concluding with a local Freightliner dealer stating that the dealership had exhausted all attempts to remedy the defects. The Blands seek damages for lodging expenses, suggesting they were unable to use the Freightliner Vehicle for sleeping purposes. They also seek damages for meals, suggesting they were unable to prepare and enjoy meals within the comfort of the Freightliner Vehicle. The Blands enumerate a litany of defects, which substantially frustrate the purpose and benefit of the bargain. As such, the Plaintiffs have sufficiently shown an equitable breach.

### 4. Proper Notice of Revocation

Before rescinding the contract, the purchaser must provide proper notice to the seller as to his intentions. *See Frank Griffin Volkswagen, Inc. v. Smith*, 610 So.2d 597, 605 (Fla. 1st DCA 1992) (providing that written notice and oral notice are proper forms of notice to satisfy the notice requirement).

On or about January 24, 2001, the Blands provided proper written notice to Freightliner as to their intent to rescind the contract. In the letter to a Freightliner dealer, the Blands expressed their intent to rescind the contract. This, as the Blands argue, was sufficient notice because the Sweeny Truck Sales served as Freightliner's agent.

### 5. Restoration to Original Position

██ Under Florida law, "equity will not usually order rescission unless the condition of the parties may be restored as it existed prior to the execution of the contract." *Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement System of City of Detroit*, 50 F.3d 908, 917 (11th Cir.1995). *See also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 313 (Fla. 2000) (citing *Lang v. Horne*, 156 Fla. 605, 23 So.2d 848, 853 (1945)) (stating a prerequisite to rescission of contract is placing the other party in status quo).

██ The Blands illustrate their attempts to place both Freightliner and themselves into the same condition as before the sale. In exchange for the return of the Freightliner Vehicle, they seek the return of the purchase price along with the damages flowing from the defects. However, the Freightliner Vehicle is defective and one might ask how the Blands could return the defective vehicle, leaving Freightliner with arguably a worthless asset. Florida law allows rescission where restoration to the status quo is impossible. *Braman Dodge, Inc. v. Smith*, 515 So.2d 1053, 1054 (Fla. 3d DCA 1987). "A court

may still grant rescission, provided the equities between the parties can be balanced." *Id.* While it is left to be determined whether the parties can be returned to the status quo, the Blands have sufficiently pled an attempt to place the parties in their original positions.

**6. No Adequate Remedy at Law**

■■■ A party asserting a claim in equity must successfully demonstrate the absence of a remedy at law. "The touchstone for equity is the lack of an adequate legal remedy and hence, the scope of equity is inversely related to the scope of available remedies at law." *Mission Bay Campland, Inc. v. Sumner Financial Corp.*, 72 F.R.D. 464 (M.D.Fla.1976). As such, if there exists a remedy at law, "a court may not exercise its equity powers when there is an adequate remedy at law." *Lake Tippecanoe Owners Ass'n Inc. v. National Lake Developments, Inc.*, 390 So.2d 185 (Fla. 2d DCA 1980). *See e.g., Weaver v. Florida Power & Light Co.*, 172 F.3d 771 (11th Cir.1999) (arbitration); *Engle Homes, Inc. v. Krasna*, 766 So.2d 311 (Fla. 4th DCA 2000) (statutory relief).

The Blands pled the defects in the Freightliner Vehicle as the reason for the lack of a legal remedy. More specifically, the repeated attempts to seek repair of the Freightliner Vehicle and Freightliner's failure to remedy the defects is sufficient for the Blands to survive the motion to dismiss. Additionally, the Blands allege an accurate determination for damages would be impossible to determine and that they have no adequate remedy at law.

Accordingly, Freightliner's motion to dismiss as to count one of the Blands' complaint is not well taken.

*b. Count II—Revocation of Acceptance*

Revocation of acceptance is a remedy that allows "the buyer [to] revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs the value to her or him if she or he has accepted it on the reasonable grounds that its nonconformity would be cured and it has not been seasonably cured, or without discovery of such nonconformity if her or his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Section 672.608, Fla. Stat. (2001). In this case, the Court must look to the defects and the extent of the defects to determine whether the nonconformity substantially impaired the Freightliner Vehicle's value. *See Tom Bush Volkswagen, Inc. v. Kuntz*, 429 So.2d 398 (Fla. 1st DCA 1983) (holding defects in the air conditioning, cruise control, and windshield wiper systems substantially impaired the vehicle's value).

In *Royco, Inc. v. Cottengim*, 427 So.2d 759 (Fla. 5th DCA 1983), a motor home purchaser experienced several vehicular defects. Upon discovery, the purchaser returned the motor home to seek the necessary repairs. *Id.* There were only three defects in the mobile home for which the purchasers sought repair. The court allowed the purchasers to revoke the acceptance after the mechanics could not repair the defects. *Id.*

■■■ The Blands alleged a litany of defects and problems relating to the Freightliner Vehicle. Like *Royco* and *Volkswagen*, the defects were numerous and continuous. Initially, the defects, taken individually, would not create a right to revoke acceptance of the purchase. By the plain language of the statute, repairable defects would not substantially impair the value of the vehicle. The Blands, on numerous occasions, attempted to seek an appropriate remedy, namely repair of the vehicle. Such repairs became impossible. Collectively taking defects as a whole, Freightliner might argue the defects still

do not substantially affect the value of the Freightliner Vehicle.

The statement in *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 321 (Fla. 3d DCA 1972), settles the argument. "After the purchase of an automobile, the same should be put in good running condition; that is the seller does not have an unlimited time for the performance of the obligation to replace or repair parts. The buyer [of a vehicle] is not bound to permit the seller to tinker with the [vehicle] indefinitely in the hope that it may ultimately be made to comply with the warranty." *Id.* "Every buyer has the right to assume his new car, with the exception of minor adjustments, will be 'mechanically new and factory furnished, operate perfectly, and be free of substantial defects.'" *Tom Bush Volkswagen, Inc. v. Kuntz*, 429 So.2d 398, 399 (Fla. 1st DCA 1983).

When the Blands demonstrated the repeated attempts (twenty-one times) to cure the various defects, they sufficiently demonstrated the substance of the impairment. The alleged twenty-one repair attempts is sufficient to withstand Freightliner's motion.

Accordingly, Freightliner's motion to dismiss as to count two of the Blands' complaint is not well taken.

### c. Count III—Breach of Express Warranty

 The Blands alternatively plead for damages alleging breach of the express warranty Freightliner provided following the purchase of the Freightliner Vehicle. A warranty, whether express or implied, is fundamentally a contract. *Navajo Circle, Inc. v. Development Concepts Corp.*, 373 So.2d 689 (Fla. 2d DCA 1979). "Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."

*Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992).

### 1. A Valid Contract

In order to breach a contract, the contract must have been in existence. *Johnson v. All American Life Ins. Co.*, 838 F.Supp. 1556 (M.D.Fla.1993). There should be no doubt as to the existence of the warranty between the Blands and Freightliner. In exchange for the purchase, Freightliner provided an express warranty, affirming the vehicle to be free of defects. This warranty also provided the remedies for the defective Freightliner Vehicle. Once the defects became irreparable, the instrument that promised the Freightliner Vehicle to be free of defects was the instrument in which the Blands could allege the breach.

### 2. Material Breach

 A material breach occurs only when an injured party has sustained a substantial injury due to the breach. *Malladi v. Brown*, 987 F.Supp. 893 (M.D.Ala. 1997). To determine whether the breach is material, there are certain criteria one may consult when undertaking such a task. *Id.* (citing Section 241, Restatement (Second) of Contracts (1979)). According to the Restatement, one should consider: (1) the extent to which the injured party will be deprived of the benefit which can reasonably be expected; (2) the extent to which the injured party can be adequately compensated for the part of the benefit of which she will be deprived; (3) the extent to which the breaching party will suffer forfeiture; (4) the likelihood that the breaching party will cure; and (5) the extent to which the behavior of the breaching party comports with the standards of good faith and fair dealing. Section 241, Restatement (Second) of Contracts.

In their complaint, the Blands sufficiently satisfy many of the criteria needed to tip the scales in favor of a material breach. First, the Blands seek damages for what they expected to be a valuable investment. They complain about the multitude of defects on the Freightliner Vehicle. In its present stage, the damages have limited the level of enjoyment and expectation that comes with the ownership of a new vehicle. Second, the way to compensate the Blands for the lost benefit of the enjoyment and use of the vehicle would be to repair the defects. To no avail, the Blands have traveled down the road to seek repairs twenty-one times. By alleging the problems and the repeated attempts to mitigate the damages, the Blands illustrate the breach is no longer a minor issue. It is material. Third, the Blands illustrate the numerous times they provided Freightliner with the opportunity to cure. Every time they brought the Freightliner Vehicle in for repair, the likelihood of repair steadily decreased. The likelihood of repair at this stage seems *de minimus*. Considering the factors as delineated by the Restatement, the Blands have sufficiently pled the materiality of the breach.

### 3. Damages

▉▉▉▉ "Florida follows the general rule that to be recoverable, damages for breach of contract 'must arise naturally from the breach, or have been in contemplation of both parties at the time they made the contract, as the probable result of a breach.'" *T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1532 n. 11 (11th Cir.1985) (citing *Hobbley v. Sears, Roebuck and Co.*, 450 So.2d 332, 333 (Fla.App. 1st Dist.1984)). Moreover, "damages are recoverable so long as the actual consequence of breach of contract could have been reasonably expected to flow from the breach." *T.D.S., Inc.*, 760 F.2d at 1520, n. 11. (citing *Natural Kitchen, Inc. v. American Transworld Corp.*, 449 So.2d 855, 860 (Fla. 2d DCA 1984)).

The Blands claimed damages occurred as a result of the breach. However, pleading damages are not enough. The question lies in whether the Blands sufficiently pled as to whether the damages arose naturally from the breach and were reasonably expected to flow from the breach. The warranty expressly guarantees that the Freightliner Vehicle will be free from defects for a certain period of time. However, when the Freightliner Vehicle suffered continuous defects, the remedy flew out the window. All that remained was the Freightliner Vehicle. The question lies in whether the damages were a reasonable consequence of the breach. The Blands contend the breach of the warranty cost them money in the form of sleeping and lodging expenses. While Freightliner could argue sleeping and lodging expenses were not a reasonable consequence of the breach, in cases such as a mobile home, where the purchaser relies upon the mobile home not only as a mode of transportation but as a place to sleep for the night, the damages flow from the breach. Additionally, the Blands allege the breach resulted in costs to repair the vehicle. Initially the warranty covered any vehicle defects. The warranty could only extend so far. The defects, as the Blands allege, are beyond the warranty's scope. It is a reasonable consequence of the breach that the Blands suffered damages. As such, the Blands have sufficiently pled the final element needed to sustain a cause of action for Breach of Express Warranty.

Accordingly, Freightliner's motion to dismiss as to count three of the Blands' complaint is not well taken.

### II. Improper Venue

▉▉▉ Freightliner asserts that this action is improperly venued in Florida. In

pertinent part, it argues that Section 47.051, Florida Statutes (2001), mandates an action involving a foreign corporation be brought in a county where the corporation has an agent or other representative. According to Freightliner, it has no agent residing in the county in which the Blands brought the original state action. While this argument may have merit under applicable Florida law, this case is now before a federal court. "Upon removal to [federal court] the question of venue is governed by federal law, not state law, and under 28 U.S.C. § 1441(a) a properly removed action necessarily fixes venue in the district where the state court action was pending." *Hollis v. Florida State University*, 259 F.3d 1295, 1296 (11th Cir.2001).

In *Hollis*, the Eleventh Circuit recently examined derivative jurisdiction and its vitality in the federal courts. *Id.* The plaintiff in *Hollis* claimed damages under the Americans with Disabilities Act and the Florida Civil Rights Act. *Id.* at 1296–1297. He originally brought the action in state court. Eventually, the case was removed to the United States District Court for the Middle District of Florida. *Id.* at 1297. The defendant sought to transfer the case to the United States District Court for the Northern District of Florida, claiming the action was improperly venued, under applicable state law. *Id.* Defendant relied upon the judicially-created theory of derivative jurisdiction. *Id.* Derivative jurisdiction was derived from the idea that "the jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally be brought there have had jurisdiction." *Id.* at 1298 (quoting *Lambert Run Coal Co. v. Baltimore O.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922)).

The Eleventh Circuit held that derivative jurisdiction is no longer a viable option for court participants in the federal court system. *Id.* at 1300. "In 1986, Congress amended 28 U.S.C. § 1441 (2000), the general removal provision, by adding subsection (e). That subsection provides that a district court to which a civil action is removed is 'not precluded from hearing and determining any claim' simply because the state court from which the action was removed 'did not have jurisdiction over the claim.'" *Id.* at 1298. As a result of the Congressional amendment to 29 U.S.C. § 1441, derivative jurisdiction is no longer a tool which federal litigants may use to transfer cases to alternative venues.

In the case at bar, the Blands originally brought their claims in state court. Under state law, the jurisdiction may have been improper. However, once the case moved under this Court's jurisdiction, the state rules governing jurisdiction became secondary to the rules governing federal jurisdiction; more specifically the recent Congressional amendments. Freightliner failed to assert a lack of jurisdiction and effectively waived their claim for improper venue upon transfer to the auspices of the federal courts.

Accordingly, Freightliner's request to transfer for improper venue is not well taken. Accordingly, it is

**ORDERED** that Defendant Freightliner's Motion to Dismiss (Dkt. 6) is **denied** and the Defendant **shall have** ten days to answer the complaint.