[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16220
Non-Argument Calendar

_____

D.C. Docket No. 3:11-cv-00403-HES-TEM


UNITED STATES OF AMERICA,
for the use and benefit of W.W. Gay Mechanical Contractor, Inc.,
W.W. GAY MECHANICAL CONTRACTOR, INC.,
a Florida corporation,

                    Plaintiffs - Appellees,

versus

WALBRIDGE ALDINGER COMPANY,
a Michigan for profit company,
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,
a Connecticut corporation authorized to do business in the State of Florida,
FEDERAL INSURANCE COMPANY,
a foreign corporation authorized to do business in the State of Florida,

                    Defendants - Appellants.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 1, 2013)

Before MARCUS, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

The Walbridge Aldinger Company and its sureties (collectively, "Walbridge") appeal the district court's partial grant of summary judgment in favor of W.W. Gay Mechanical Contractor, Inc. ("W.W. Gay") on W.W. Gay's Miller Act and breach of contract claims. Walbridge also appeals the district court's award of attorney's fees under Fla. Stat. § 57.105(7). After review of the record and the parties' briefs, we affirm.

## I.

This case involves a dispute between a subcontractor and a general contractor, together with its sureties, over a construction project for the Navy. The subcontractor, W.W. Gay, asserted a Miller Act claim for unpaid amounts allegedly due under the subcontract, both for an unpaid retainage of $251,937.92 and for extra work performed costing $109,177. The general contractor, Walbridge, claimed it was entitled to withhold payment from W.W. Gay because Walbridge was assessed around $1.5 million in liquidated damages by the Navy due to delays in project completion, for which W.W. Gay was allegedly at least partly responsible. Walbridge is still in the process of administratively appealing the liquidated damages assessment under the Contracts Disputes Act.

2

The district court partially granted W.W. Gay's motion for summary judgment, ruling that W.W. Gay was entitled to payment for the full amount of the unpaid retainage and cost of extra work. The parties then entered into a stipulation on the remaining issues, in particular whether Walbridge was entitled to offset damages for W.W. Gay's alleged delay in installing and completing the factory startup of a water softener. In its summary judgment order, the district court granted W.W. Gay attorney's fees, based on a unilateral contract provision that gave Walbridge the right to seek attorney's fees under certain conditions. The district court held that W.W. Gay could also seek attorney's fees under Fla. Stat. § 57.105(7), which makes unilateral attorney's fees provisions bilateral.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir.2007). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party opposing summary judgment must present more than "[t]he mere existence of a scintilla of evidence in support of [its] position ...; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3

### III.

We first consider whether Walbridge was entitled to withhold all payment to W.W. Gay because of the liquidated damages that the Navy assessed against Walbridge. The answer, we conclude, is no.

The Miller Act protects subcontractors on federal projects by requiring contractors to post a bond to ensure payment to their subcontractors. 40 U.S.C.A. § 3133. *See also U.S. for Use & Benefit of Krupp Steel Products, Inc. v. Aetna Ins. Co.*, 831 F.2d 978, 980 (11th Cir. 1987). To establish a Miller claim, W.W. Gay must show (1) that it supplied labor and materials for work in the particular contract at issue; (2) that it is unpaid; (3) that it had a good faith belief that the materials were for the specified work; and (4) that jurisdictional requisites are met. *See Aetna Ins. Co.*, 831 F.2d at 980. To establish a breach of contract claim, W.W. Gay must show must show that (1) there was a valid contract; (2) Walbridge breached the contract; and (3) it suffered damages as a result of Walbridge's breach. *See Rollins Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006).

Walbridge argues that it did not breach its subcontract with W.W. Gay – and thus is not liable for any "amount unpaid" under the Miller Act, 40 U.S.C.A. § 3133 – because W.W. Gay did not complete performance on time; this delay resulted in the Navy assessing liquidated damages against Walbridge; and Walbridge was entitled to offset these damages against the amount owed to W.W.

4

Gay. Walbridge relies on Article III of the subcontract, which provides that Walbridge can withhold payment to W.W. Gay for any breach of the subcontract, and Article V, which provides that "time . . . is of the essence" and that W.W. Gay may be liable for liquidated and other damages if it fails to "prosecute the Work as provided herein, thereby causing delay in the progress of the Project."[1]

The problem, however, is that Walbridge has failed to produce more than a "scintilla of evidence" that W.W. Gay's alleged delays resulted in the liquidated damages assessed against it by the Navy. *See Anderson*, 477 U.S. at 252. Walbridge cites the deposition testimony of its corporate representative Awadheshwari Prasad that "several correspondence [sic] exists that [W.W. Gay's] activities have caused delay in the performance of the work affecting the critical activity," D.E. 32-2, p.12, 66:16-19, but the mere alleged existence of "correspondence" attributing delays to W.W. Gay is not proof that W.W. Gay caused any delays. Indeed, elsewhere in his deposition testimony, Mr. Prasad admits that it was the Navy that caused the delays and that these delays in turn affected W.W. Gay and the other subcontractors. *See* D.E. 32-2, p. 17, 71: 12-20.

---

[1] Paragraph 16 of the "Project Special Conditions" document that forms part of the subcontract also provides that W.W. Gay may be liable for liquidated damages and provides a schedule of liquidated damages based on what "phase" of the project the delay occurs in. In its brief, Walbridge does not claim a right to assess liquidated damages against W.W. Gay according to this schedule and does not cite to any evidence regarding the phases during which W.W. Gay's alleged delays took place. Instead, Walbridge argues that W.W. Gay is partially liable for the liquidated damages that the Navy assessed against Walbridge.

5

Significantly, the subcontract provides that W.W. Gay is only liable for liquidated damages if its "failure to prosecute the Work . . . *caus[es] delay* in the progress of the Project" (emphasis added). Prasad's testimony only suggests that W.W. Gay was delayed, not that it caused any delay, as required by the plain terms of the subcontract.

Walbridge also cites a letter from an alleged expert analyzing the project delays that lead to the liquidated damages. This letter, however, does not even mention W.W. Gay, much less attribute any delays to its work. Walbridge makes much of the fact that one of the six areas in which the expert identified delays was the "Comprehensive Interior Design," or "CID," and that W.W. Gay's scope of work included the operating rooms, which were part of the CID. Yet Walbridge offers zero evidence that the CID delays stemmed from work on the operating rooms, much less from W.W. Gay's work on the operating rooms. In fact, Walbridge's expert attributes the CID delays to deficient drawings, which apparently had nothing to do with W.W. Gay.

The only other specific instance of delayed work that Walbridge attributes to W.W. Gay is the installation and factory startup of a water softener. Again, however, Walbridge points to no evidence that this alleged delay had anything to do with the liquidated damages assessed against it. In fact, Walbridge stipulated that it had no such evidence. As the district court noted, Walbridge has failed to

6

show "it has sustained a substantial injury due to the breach," which is required to show material breach. *See Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002).[2]

Even if we applied the alternative definition of a material breach as non-performance that "go[es] to the essence of the contract," *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. Dist. Ct. App. 2003), and we accepted that "time is of the essence" of the subcontract pursuant to Article V, Walbridge would still not be excused from payment. Walbridge offers no evidence that W.W. Gay failed to install the water softener "at such time and in such order and sequence as Contractor may direct;" that it "interfere[d] with or delay[ed] the work of the Owner, Contractor or other subcontractors;" or that it failed to comply with the project's "progress schedule," as required by Article V. The only evidence to which Walbridge points regarding W.W. Gay's alleged delay in installing the water softener is a conclusory statement by Walbridge's assistant vice president that "[a]ccording to Walbridge's contract with the Navy, Walbridge was required

---

[2] The two cases that Walbridge cites for the proposition that untimely performance by a subcontractor can preclude it from recovering contract damages are unavailing. In both cases, the general contractor established that the subcontractor substantially delayed project completion and thereby caused injury, something for which Walbridge has presented no evidence. *See United States for Use & Benefit of Clark Eng'g Co. v. Freeto Const. Co., Inc.*, 547 F.2d 537, 541 (10th Cir. 1977) (upholding district court's finding that 252-day delay, resulting in over $20,000 in liquidated damages assessed against general contractor, was "due solely to [subcontractor's] untimely performance"); *Pub. Health Trust of Dade Cnty. v. Romart Const., Inc.*, 577 So. 2d 636, 637 (Fla. Dist. Ct. App. 1991) (upholding liquidated damages provision where jury found that subcontractor "fail[ed] to substantially complete the project on time," resulting in delayed construction of a medical center).

to complete the Project by January 21, 2011" and that W.W. Gay completed the water softener six months later, which delayed Walbridge's performance. *See* D.E. 35-1, ¶¶ 4-9. Without more details or documentation regarding the timing of this massive construction project (e.g., whether the project completion date was ever modified or compromised by factors independent of W.W. Gay, whether the installation of the water softener required the prior completion of work that W.W. Gay did not control, in what specific ways W.W. Gay's alleged delay set back the project, etc.), we need not credit such self-serving, conclusory assertions. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

Because Walbridge offers no evidence that W.W. Gay was in any way responsible for the liquidated damages that the Navy assessed, or for any other injury to Walbridge, we hold that Walbridge was not entitled to withhold payment from W.W. Gay for the "labor and materials" that it indisputably provided pursuant to the subcontract. *See* 40 U.S.C.A. § 3133. Given this holding, we do not reach the issue of whether the Miller Act precludes a surety from enforcing the contract provisions relied on by Walbridge, since we find that these provisions, even if enforced, do not absolve Walbridge of its payment duties.

**IV.**

We next address whether W.W. Gay is entitled to $109,177 in compensation for the extra work it performed in rerouting an underground storm pipe. We conclude that it is.

The undisputed record establishes that W.W. Gay learned of a potential problem regarding the planned location of a storm pipe and notified Walbridge. Walbridge directed W.W. Gay to proceed with the installation of the storm pipe anyway. Walbridge then waited nearly six weeks to send a request for information to the Navy, who ultimately responded with instructions to reroute the storm pipe. By letter dated February 5, 2009, Walbridge directed W.W. Gay to reroute the storm pipe "in accordance with Article VII of our Subcontract." The letter stated that an adjustment to the contract price would be made "in accordance with applicable provisions of the Agreement between Walbridge and the Owner." D.E. 29-25, p. 62.

W.W. Gay responded that it was willing to reroute the pipe but that it "will not assume any cost or liability," "fully expect[ed] to be reimbursed all costs," and proposed to use time sheets to keep track of time on the project. *Id.* at 63. Walbridge replied: "It is our intention to pay W.W. Gay as stated in our 2/5/09 letter. We do not have a problem with keeping track of time on time sheets. Time sheets will be verified by Ted or Dave." *Id.* W.W. Gay then completed the work, whose undisputed cost was $109,177. W.W. Gay submitted an invoice to

9

Walbridge, who forwarded it to the Navy. The Navy agreed only to pay a fraction of the total cost because Walbridge initially ordered the work despite being aware of a potential problem.

The subcontract provisions dealing with extra work are Articles II and VII. Article II(b) of the subcontract provides that the subcontract price may be "adjusted by change order as a result of changed work as provided in Article VII." Article VII in turn provides:

> Contractor may, without invalidating the Subcontract or any bond given hereunder, order extra and/or additional work, deletions, or other modifications to the Work, such changes to be effective only upon written order of Contractor. Any adjustment to the Subcontract Price or the time for completion of the Work shall be made in accordance with the applicable provisions of the Agreement between Owner and Contractor and the lump sum or unit prices set forth in Exhibit E or, in the absence of such provisions on an agreed, equitable basis. Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment, Subcontractor shall, if directed by Contractor, nevertheless proceed in accordance with the order, and the Subcontract shall be adjusted as reasonably determined by the Contractor with any dispute to be resolved after the completion of the Work. If requested by the Contractor, the Subcontractor shall perform extra work on a time and material basis, and the Subcontract price shall be adjusted based on time records and materials checked by the Contractor on a daily basis.

Walbridge argues that, even though it directed W.W. Gay to perform the extra work and stated its "intention to pay W.W. Gay as stated in our 2/5/09 letter," this letter specifically limited any adjustment in the subcontract price to that allowed by "applicable provisions of the Agreement between Walbridge and the Owner." Walbridge, though, has not disclosed what those applicable provisions

10

may be or how they differ, if at all, from W.W. Gay's expectations. Interpreting the evidence we have before us in the light most favorable to Walbridge, we find only one reasonable interpretation of the parties' agreement: that W.W. Gay would be compensated for its work, pursuant to Article VII of the contract, "on a time and material basis" as tracked by the timesheets approved by both parties. *See Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988) (contract interpretation is question of law where contract is subject to only one reasonable interpretation).

Even assuming that the interpretation of the contract raises issues of material fact, Walbridge is still liable, as the district court found, under the duty of good faith and fair dealing implied in all contracts. *See Fernandez v. Vazquez*, 397 So. 2d 1171, 1174 (Fla. 3d DCA 1981). Walbridge ordered W.W. Gay to install the storm pipe despite the problem that W.W. Gay had promptly called to Walbridge's attention; Walbridge then waited six weeks to ask the Navy for advice; and after W.W. Gay had already finished installing the pipe, Walbridge ordered W.W. Gay to reroute the pipe. W.W. Gay understandably insisted that it receive full compensation for its work, and Walbridge accepted, or at least manipulatively encouraged, this expectation. Moreover, the only reason that the Navy did not pay for W.W. Gay's work is because of Walbridge's initial error in judgment. Thus, Walbridge cannot now invoke the Navy's refusal to pay to avoid its obligations to

11

W.W. Gay. *See S. Internet Sys., Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1128-29 (Fla. Dist. Ct. App. 2003) ("It is a well-established principle of law that one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be relieved of his responsibility to perform under the contract.") Because Walbridge does not contest that $109,177 is the reasonable cost of W.W. Gay's work, it is liable for the full amount.[3]

## V.

Finally, we consider whether W.W. Gay is entitled to attorney's fees under Fla. Stat. § 57.105(7).

Flordia courts have read § 57.105(7) to provide for "reciprocity of prevailing party attorneys' fee provisions." *Placida Prof'l Ctr., LLC v. F.D.I.C.*, 512 F. App'x 938, 952 (11th Cir. 2013). It provides:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.

---

[3] Walbridge gets nowhere by invoking language at the end of Article VII of the subcontract stating that the time for completion for W.W. Gay's work could not be modified without a change order. We find this language irrelevant here because the issue is the adjustment of the subcontract price, not the time for completion (and as discussed above, Walbridge has presented no evidence that W.W. Gay's alleged late completion excused Walbridge's payment obligations).

Despite this broad language, Florida courts have held that "[t]his reciprocity is limited to the specific terms of the attorney's fees provision in a contract." *Escambia Cnty. v. U.I.L. Family Ltd. P'ship*, 977 So. 2d 716, 717 (Fla. Dist. Ct. App. 2008). However, where the action seeking attorney's fees "differs from the action envisioned in the contract only with respect to who sat on each side of the courtroom," then reciprocity must apply. *Id.*

Here, on its face, thee attorney's fee provision in the subcontract is more complex than an all-purpose fee-shifting clause in favor of Walbridge. Nevertheless, a close look at the language of the provision reveals that it gives Walbridge the right to obtain attorney's fees for an action seeking to enforce *any* provision of the subcontract. Article XIV of the subcontract provides in pertinent part:

> If the Subcontractor . . . fails in the performance or observance of *any of the provisions of this Subcontract* . . . then Contractor, after giving the Subcontractor written or (oral, confirmed in writing) notice of such default and forty eight (48) hours within which to cure such default, shall have the right to exercise any one or more of the following remedies:
> . . .
> (iv) Recover from Subcontractor all costs incurred by Contractor to complete the work plus a 10% mark-up for overhead and profit, and further recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and *all reasonable attorneys' fees suffered or incurred by Contractor by reason of or as a result of Subcontractor's default*.

Given that "the purpose of the statute is simply to ensure that each party gets what it gives," *Inland Dredging Co., L.L.C. v. Panama City Port Auth.*, 406 F. Supp. 2d

13

1277, 1283 (N.D. Fla. 2005), and given that W.W. Gay has clearly given Walbridge a broad right to seek attorney's fees for any contract default (on the sole condition that Walbridge provide written 48-hour notice), W.W. Gay gets that same right in return. W.W. Gay submitted a final payment application on August 10, 201, *see* D.E. 29-27, p.4, and Walbridge has had well over 48 hours to cure its default. Because W.W. Gay is uncontestably a prevailing party in this action, it is entitled to "reasonable attorneys' fees suffered or incurred by [W.W. Gay] by reason of or as a result of [Walbridge]'s default" on its payment obligation to W.W. Gay.

## VI.

The district court's rulings are affirmed.

**AFFIRMED.**