Amy Totenberg, United States District Judge
I. INTRODUCTION
"Oh Lord, won't you buy me a Mercedes Benz/My friends all drive Porsches, I must make amends/Worked hard all my lifetime no help from my friends/So Lord, won't you buy me a Mercedes Benz...."[1]
The Court leads with this first verse from the famous Janis Joplin blues tune Mercedes Benz as it aptly sums up the subject matter of this case-Mercedes-Benz automobiles. For the Plaintiffs, good fortune bestowed upon them the opportunity to purchase a Mercedes-Benz automobile. However, as the reader will soon discover, the blissful relationship between these Plaintiffs and their respective Mercedes-Benz vehicles did not last. Rather, the relationship grew acrimonious due to an interloping third party hidden deep inside the vehicle's heating, ventilation, and air conditioning system ("HVAC System")-mold. As a result, Plaintiffs, Sunil Amin and Trushar Patel (collectively, the "Plaintiffs"), spurred in large part by the "noxious, pungent, sour, musty odor" being emitted "by the HVAC System" as well as the "unexpected, extraordinary, and costly maintenance steps ... necessary to prevent [the mold's] development," bring this putative class action against Defendants Mercedes-Benz USA, LLC ("MBUSA"), and Daimler AG ("Daimler") (collectively, the "Defendants") alleging various state statutory and common law causes of action stemming from "the design, manufacture, marketing, advertising, selling, warranting, and servicing" associated with the "heating, ventilation, and air conditioning systems installed in certain categories of vehicles designed and manufactured by Daimler."[2] See generally Complaint ("Compl.") (Doc. 1). Specifically, Plaintiffs assert that the HVAC System installed in these vehicles harbors a "serious design defect that causes the HVAC System to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildew odor that permeates the vehicle cabin when the HVAC System is activated; and (c) cause *1344 the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose." See generally id. As a result, Plaintiffs have interposed the following causes of action against Daimler: (1) violations of the Georgia Fair Business Practices Act ( O.C.G.A. Section 10-1-390 ) (Count V); (2) violations of Georgia's Uniform Deceptive Trade Practices Act ( O.C.G.A. Section 10-1-370 ) (Count VI); (3) Breach of the Implied Warranty of Merchantability (Count VII); (4) Fraud by Concealment (Count VIII) and (5) Unjust Enrichment (Count IX). See id. Plaintiffs seek damages, declaratory and injunctive relief. Id. (Relief Requested).
Presently before the Court is Daimler's Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). See Notice of Motion [Doc 41]. Plaintiffs oppose the motion. For the reasons that follow, Daimler's motion to dismiss is DENIED .
II. BACKGROUND
A. The March 13, 2018 Order
On March 13, 2018, the Court issued an Order adjudicating MBUSA's motion to dismiss the Complaint. (Doc. 30).[3] After summarizing the underlying facts, the Court analyzed MBUSA's attack on each of Plaintiffs' causes of action.[4] Following its analysis the Court concluded that
Mercedes' Motion to Dismiss [Doc. 17] is GRANTED in part and DENIED in part. Mercedes' Motion is GRANTED as to (a) Plaintiffs' claims for breach of express warranty, (b) Magnuson-Moss breach of express warranty, (c) violation of GUDTPA regarding Mercedes' marketing and advertising. Mercedes' Motion is DENIED as to all other claims.[5]
B. Facts[6]
In light of the parties' as well as the Court's familiarity with the underlying alleged facts of this matter based upon its previous decision concerning MBUSA's motion to dismiss (which involved claims based upon the same underlying facts and circumstances as Daimler's motion) and for the sake of brevity, the Court hereby incorporates by reference the facts as set forth in its previously issued Order. See (Doc. 30 at 2 through 5).
III. STANDARD OF REVIEW
This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A *1345 pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002) ; see also Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc. , 753 F.2d 974, 975 (11th Cir.1985), cert. denied , 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus , 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing Bell Atlantic v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Hill v. White , 321 F.3d 1334, 1335 (11th Cir. 2003) ; see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc. , 40 F.3d 247, 251 (7th Cir.1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").
A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Twombly , 550 U.S. at 555-556, 127 S.Ct. 1955 ; Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." Twombly , 550 U.S. at 556, 127 S.Ct. 1955 (citations and quotations omitted). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Twombly , 550 U.S. at 556, 127 S.Ct. 1955. A Plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555, 127 S.Ct. 1955.
IV. DISCUSSION
A. Preliminary Issues
1. Consideration of Additional Materials
Prior to addressing the substantive issues, the Court finds it necessary to determine whether it may consider certain documents attached as exhibits to Plaintiffs' opposition memorandum in adjudicating the instant motion. Specifically, Plaintiffs have asked the Court to consider the following documents: (1) November 30, 2012 letter from MBUSA to National Highway Traffic Safety Administration ("NHTSA") dealing with management of a safety recall involving certain Mercedes-Benz vehicles; (2) May 2017 Recall Letter involving defective steering coupling sent to Mercedes-Benz owner (owner's name and address information has been redacted); (3) March 1, 2018 Letter from Daimler and MBUSA to Chief Counsel of NHTSA concerning Takata airbag recall; (4) Mercedes-Benz Brand Communication Standards; (5) MBUSA's response to request for interrogatories in the related case, Bhatt et al. v. Mercedes-Benz USA, LLC et al. , Case No. 2:16-cv-03171 (C.D. Cal.); and (6) Daimler's Initial Disclosures in the Bhatt litigation. See Plaintiffs' Opposition to Defendant Daimler AG's Motion to Dismiss *1346 ("Pls.' Opp'n") (Doc. 45) Exhibits ("Ex.") 1-6.
In general, when analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is limited to the four corners of the complaint and any exhibits attached thereto. See Tellabs, Inc. v. Makor Issues & Rights, Ltd. , 551 U.S. 308, 322, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). However, matters which can be deemed "incorporated by reference," that is, those documents, attached to a motion to dismiss, and which are "(1) central to the plaintiff's claim; and (2) undisputed" may also be considered without converting the motion into one for summary judgment Horsley v. Feldt , 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp. , 182 F.3d 799, 802 n. 2 (11th Cir. 1999) ); see M.C. Dean, Inc. v. City of Miami Beach, Fla. , 199 F.Supp.3d 1349, 1352 (S.D. Fla. 2016) ("In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint, exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to the plaintiff's claim and undisputed.") (citing Day v. Taylor , 400 F.3d 1272, 1276 (11th Cir. 2005) ). " 'Undisputed' in this context means that the authenticity of the document is not challenged." Horsley , 304 F.3d at 1134. A court may also consider matters of which judicial notice may be taken." Tellabs, Inc. , 551 U.S. at 322, 127 S.Ct. at 2509, 168 L.Ed.2d 179 ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); see Fed. R. Evid. 201(a) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Moreover, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" may also be considered." Souers v. Geren , No. CV 108-157, 2010 WL 1169730, at *1 (S.D. Ga. Mar. 23, 2010).
While Plaintiffs assert that "[t]he Court may take judicial notice of the documents cited in this section because they are undisputed matters of public record and/or Daimler's own marketing materials that are central to Plaintiffs' claims and incorporated by referenced in the Complaint," the Court respectfully disagrees, except with respect to Exhibit (6), a document consisting of Daimler's own Initial Disclosures filed in the parallel proceeding to the instant case. Pls.' Opp'n at 7 n. 1; see Bhatt et al. v. Mercedes-Benz USA, LLC et al. , Case No. 2:16-cv-03171 (C.D. Cal.). Initially, even assuming arguendo that the attached materials are "central" to Plaintiffs' claims (and the Court harbors significant doubt that the letters, which comprise four of the six attachments, and which have no direct explicit relationship to the individual claims at issue could be plausibly characterized as being "central" or otherwise "integral" to the Complaint) these documents are not "undisputed" as Defendant, albeit in a perfunctory manner, has challenged the authenticity of these attachments. See Defendant Daimler AG's Reply in Support of its Motion to Dismiss ("Def.'s Reply") (Doc. 46) at 3 n.1 (maintaining that taking judicial notice of attached documents would be improper where "Plaintiffs have not [ ] attempted to authenticate the 105 pages of documents they attached as exhibits" nor have they shown "on a document-by-document basis, that the standard for judicial notice has been satisfied.").
*1347 As to exhibits (1) through (4) (the various recall letters), Plaintiffs have failed to sufficiently apprise the Court as to why and how the information set forth in each proffered letter fits within the strictures of those facts which may be judicially noticed because they are "generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(a). Neither is it self-evident from the face of each letter that the standard under Rule 201(a) has been satisfied. Moreover, Plaintiffs have not attempted to authenticate any of these letters, that is, they have not proffered sufficient evidence showing that "the item is what the proponent claims it is." Fed. R. Evid. 901(a). Nor do these letters fall within the subset of those documents which may be self-authenticated. See Fed. R. Evid. 902. Therefore, in light of the fact that Daimler disputes the veracity of these materials and given that Plaintiffs have, at this stage, failed to properly authenticate these documents, the Court, in an abundance of caution, will not consider them in adjudicating the instant motion.
Turning to Exhibit (5), which comprises discovery responses purportedly filed in the Bhatt litigation, it does not appear to contain relevant evidence central to Plaintiffs' claims, and, on that basis, the Court declines to consider it in adjudicating the instant motion.
In light of the foregoing analysis, the Court finds that it may only consider Exhibit (6) attached to Plaintiffs' opposition. Therefore, the balance of these documents (Exhibits (1)-(5) ) shall be disregarded during the Court's analysis.
B. Whether Plaintiffs' Allegations Against Daimler Satisfy Applicable Pleading Standards
Daimler's opening salvo primarily attacks the sufficiency of Plaintiffs' Complaint based upon its assertion that the Complaint constitutes an impermissible "shotgun" pleading.[7] Def.'s Mem. at 4-10. Specifically, Daimler maintains that Plaintiffs' pleading runs afoul of Rule 8(a) for two reasons: (1) "[e]ach of the Complaint's nine counts incorporates by reference all of the allegations that come before it in the Complaint" making it "impossible to discern which allegations are relevant to which count" and (2) the Complaint "repeatedly uses the term 'Mercedes' to refer indiscriminately to both Daimler [ ] and MBUSA" and that "[a]s a result, it is impossible for Defendants to know which conduct Plaintiffs allege as the basis for Daimler['s] liability and which conduct Plaintiffs allege as the basis for MBUSA's liability." Id. at 5-6. In addition, Daimler asserts that this "grouping" of Daimler and MBUSA into a single fictitious entity named "Mercedes" is "especially egregious with respect to their fraud-based claims, which are subject to the heightened pleading standard of Rule 9(b)." Id. at 8-10.[8]
*1348 In response, Plaintiffs assert that Daimler, in its "shotgun" pleading attack, has "completely disregard[ed] Plaintiffs' core theory of agency liability-that Daimler directed and acted through its wholly-owned subsidiary, MBUSA-including the Complaint's [ ] allegations that MBUSA was Daimler's agent for purposes of marketing, sales, warranty claims, and customer relationships...." Pls.' Opp'n at 3-4 (citing Compl. ¶¶ 38-39, 42-46). Based upon this theory, Plaintiffs take the position that the "Complaint plausibly alleges that Daimler controlled and directed MBUSA's actions with respect to the defective Class Vehicles at all relevant times [and] Daimler cannot now claim that it is unable to discern the basis of the claims against it." Pls.' Opp'n at 4. Specifically, Plaintiffs argue that Defendant's "shotgun" pleading attack fails because: (1) "any concerns about a failure to distinguish between defendants are eliminated where [ ] a defendant is alleged to have violated the law by acting through its agent" and in this case the Complaint "fairly apprises Daimler of its liability for all [of] the allegations against 'Mercedes'-which includes both defendants-detailed in the Complaint;" (2) the claims are "plead[ed] in abundant detail, articulating a clear factual basis for their allegations;" (3) "Daimler has received abundant notice of the claims and legal theories at issue in this case" since both "Daimler and MBUSA-represented by the same counsel-filed substantive [ ] Rule 12(b)(6) motions rather than moving for a more definite statement in this case (or in Bhatt ), demonstrating that they had no difficulty responding to Plaintiffs' pleading;" and (4) "Complaints that give defendants adequate notice of the claims against them need not be dismissed as shotgun pleadings even if they reincorporate prior paragraphs in each cause of action" and, in any event, "Daimler itself employs these same pleading conventions when it files litigation." Id. at 13-19 (citing complaints filed by Daimler in two federal district court cases).
In reply, Daimler asserts that (1) even recognizing Plaintiffs' agency theory, the Complaint still constitutes a "shotgun" pleading since "such allegations do not excuse Plaintiffs' failure to distinguish between multiple defendants" and thus "are insufficient to meet the pleading standard of Rule 8" and (2) Even if Plaintiffs' agency theory were able to cure the alleged pleading insufficiency, the Complaint, according to Daimler, fails to sufficiently plead an agency relationship as between Daimler (as principal) and MBUSA (as agent). Defendant Daimler AG's Reply in Support of its Motion to Dismiss ("Defs.' Reply") (Doc. 46) at 2-9.
1. Applicable Law
"Complaints that violate either Rule 8(a)(2)[9] or Rule 10(b),[10] or both, are often disparagingly referred to as 'shotgun pleadings.' " Weiland v. Palm Beach Cty. Sheriff's Office , 792 F.3d 1313, 1320 (11th Cir. 2015). In Weiland , the Eleventh Circuit acknowledged that although it has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings" some of its *1349 pronouncements on this topic have "at times been nearly as lacking in precision as the target itself." Id. at 1321. As such, in order to "impose some clarity on what [the Eleventh Circuit] has said and done about unclear complaints" the court, after examining "more than sixty published decisions issued since ... 1985" has "identified four rough types or categories of shotgun pleadings." Id. These four "rough" categories are comprised of the following:
[1] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint ... [2] a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action ... [3] [a complaint that does] not separat[e] into a different count each cause of action or claim for relief ... [and] [4] [a complaint] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.
Id. at 1321-23 ; see, e.g. , Jackson v. Bank of Am., N.A. , 898 F.3d 1348, 1356 (11th Cir. 2018) ("The amended complaint is an incomprehensible shotgun pleading. It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief. As such, the amended complaint patently violates Federal Rule of Civil Procedure 8...."); Novero v. Duke Energy , No. 17-14963, --- F. App'x. ----, ----, 2018 WL 5013823, at *5 (11th Cir. Oct. 16, 2018) ("Plaintiff's original complaint is a shotgun pleading. It includes a laundry list of accused violations in paragraph 1 followed by a recitation of the 'Factual Bases for Lawsuit' unconnected to any of the potential violations previously listed."). Nevertheless, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland , 792 F.3d at 1323.
The Eleventh Circuit's strong aversion to and consistent pronouncements against the use of "shotgun" pleadings stems from the fact that such pleadings "whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled [sic ] discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard. The courts of appeals and the litigants appearing before them suffer as well." Cramer v. Florida , 117 F.3d 1258, 1263 (11th Cir. 1997) ; Davis v. Coca-Cola Bottling Co. Consol. , 516 F.3d 955, 981 (11th Cir. 2008) (discussing the "unacceptable consequences of shotgun pleading" including "inexorably broaden[ing] the scope of discovery, much of which may be unnecessary" while "lessen[ing] the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard" which "undermines the public's respect for the courts"); Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll. , 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer *1350 justice."); see also Vibe Micro, Inc. v. Shabanets , 878 F.3d 1291, 1295 (11th Cir. 2018) (outlining the ills associated with "shotgun" pleadings and reaffirming that "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings.").
Although a plaintiff, as the proverbial master of the complaint, has the ultimate responsibility to draft a pleading that complies with all applicable procedural rules, "defendants are not without a duty of their own in this area." Weiland , 792 F.3d at 1321 n. 10. Indeed, while "a defendant faced with a complaint such as [plaintiff's] is not expected to frame a responsive pleading[,] [ ] the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll. , 77 F.3d 364, 366 (11th Cir. 1996) ; see Weiland , 792 F.3d at 1321 n. 10 ; Paylor v. Hartford Fire Ins. Co. , 748 F.3d 1117, 1126-27 (11th Cir. 2014) ("Defense attorneys, of course, are not helpless in the face of shotgun pleadings-even though, inexplicably, they often behave as though they are. A defendant served with a shotgun complaint should move the district court ... for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer."); see also Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 590 n. 9, 127 S.Ct. 1955, 1985, 167 L.Ed.2d 929 (2007) (Stevens, J. , dissenting) ("The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement.") (internal quotations omitted).
Nevertheless, when faced with a "shotgun" pleading, the district court is not powerless to act in the face of defendant's silence or inaction since it possesses the "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." Vibe Micro, Inc. , 878 F.3d at 1295 (quoting Weiland , 792 F.3d at 1320 ); see Novero v. Duke Energy , --- F. App'x ----, ----, No. 17-14963, 2018 WL 5013823, at *5 (11th Cir. Oct. 16, 2018) ; Smith v. Psychiatric Sols., Inc. , 750 F.3d 1253, 1262 (11th Cir. 2014) ("District courts have unquestionable authority to control their own dockets. This authority includes broad discretion in deciding how best to manage the cases before them.") (internal quotations and citations omitted). Thus, "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." Vibe Micro, Inc. , 878 F.3d at 1296.
While the Eleventh Circuit has made its disdain for "shotgun" pleadings abundantly clear, dismissal of the complaint should be reserved for only the most egregious cases "where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Weiland , 792 F.3d at 1325 (emphasis in original) (finding district court "abused its discretion when it dismissed [certain counts of complaint] on the ground that those counts did not comply with Rules 8(a)(2) and 10(b)... since whatever their faults, these two counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted"); see Wackenhut Servs., Inc. v. Artman Studios, Inc. , No. 08-80956-CIV, 2009 WL 3028308, at *2 (S.D. Fla. Sept. 17, 2009) (declining to dismiss complaint on "shotgun" pleading *1351 grounds where although the complaint was "not [ ] drafted in the clearest, most precise manner" any pleading deficiencies did "not rise to the egregious level of a shotgun pleading" and concluding that the "proper remedy is ... a more definite statement under Rule 12(e)"); but see Barnes v. AstraZeneca Pharm. LP , 253 F.Supp.3d 1168, 1171 (N.D. Ga. 2017) (dismissing complaint on "shotgun" pleading grounds where pleading deficiencies were "particularly egregious").
2. Analysis
Initially, the Court points out that it is somewhat troubled and vexed by Daimler's "shotgun" pleading attack at this juncture since, in light of the pendency of this litigation, in which the Court has already adjudicated a motion to dismiss the Complaint pursuant to Rule 12(b)(6) filed by MBUSA (represented by the same counsel as Daimler), as well as the parallel action in Bhatt et al. v. Mercedes-Benz USA, LLC et al. , Case No. 2:16-cv-03171, presently pending in the Central District of California which involves identical defendants and nearly parallel claims, the Court finds Daimler's assertions, which profess a state of utter confusion as to "which allegations are relevant to which count" and "which conduct Plaintiffs allege as the basis for Daimler['s] and which conduct Plaintiffs allege as the basis for MBUSA's liability" to be, at best, disingenuous. See Def.'s Mem. at 5-6.
While it is true that Plaintiffs' Complaint does "incorporate by reference each allegation set forth in the preceding paragraphs," see generally Compl. (utilizing this "incorporation" language at the beginning of each of the Complaint's Nine Counts) and otherwise utilizes the shorthand "Mercedes" to refer to Daimler jointly with MBUSA, id. ¶ 1, the Court finds it implausible that Daimler is unable to ascertain the claims being lodged against it and the grounds upon which those claims rest-notwithstanding Plaintiffs' pleading conventions. Indeed, the balance of Daimler's own motion, which segues from a Rule 8(a)(2) attack into a traditional 12(b)(6) attack, belies any such notion. Rather, if the Complaint was so incomprehensible such that Daimler had no fair notice of the specific claims being interposed and the grounds upon which those claims rest, the Court finds it improbable that Daimler would be able to formulate coherent arguments as to why each of Plaintiffs' individual causes of action fail to state a claim upon which relief can be granted. Yet, after leading the charge with the instant argument, which encompasses 11 of the total 18 pages of its argument section, that is precisely what Daimler has done here. See Def.'s Mem. at 16-21; Abrams v. CIBA Specialty Chemicals Corp. , No. CIV.A. 08-0068, 2008 WL 4183344, at *5 (S.D. Ala. Sept. 10, 2008) (denying defendant's motion under Rule 12(e) and recognizing that "[a] fair review of the First Amended Complaint reveals that, while it may be imprecise in certain respects, it is not unintelligible. Nothing on the face of the First Amended Complaint supports a finding that its allegations are so vague or ambiguous that defendants are unable to respond, even with a simple denial, in good faith or without prejudice to themselves. Indeed, defendants' own filings in support of their Rule 12(b) Motion reveal that they understand, at least in general terms, the nature of the claims against them. This is simply not a case in which a defendant is unable to respond to an unintelligible pleading; to the contrary, defendants clearly grasp the claims against them well enough to file an answer.").
Further undermining Daimler's "shotgun" pleading arguments is the fact that Daimler has been on notice of the claims in this matter since at least December 22, 2017, the date it entered a special appearance in this case. See (Doc. 28). However, even after signing a stipulation accepting *1352 service in exchange for all punitive damages claims being stricken (as to Daimler only) and agreeing to file an answer or otherwise respond to the Complaint by June 22, 2018, Daimler has never petitioned the Court to direct Plaintiffs to file a more definite statement pursuant to Rule 12(e) based upon any purported pleading deficiencies, which would have been the proper course of action in the event Daimler found the pleading to be incomprehensible such that it was hamstrung from filing a response. See Anderson , 77 F.3d at 366 (recognizing that although a defendant need not file a responsive pleading to a "shotgun" complaint "defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement."); Weiland , 792 F.3d at 1321 n. 10 (same); Paylor , 748 F.3d at 1126 (same). Had Daimler done so, prompt corrective action could have been taken in the event the pleading required amplification as to those claims levied against Daimler.
Moreover, although Daimler makes much of the fact that Plaintiffs refer to both Daimler and MBUSA collectively as "Mercedes" and that such a tactic makes it "impossible for Defendants to know which conduct Plaintiffs allege as to the basis for Daimler['s] liability," Def.'s Mem. at 6, this argument, in light of the present context and specific factual circumstances of this case, lacks merit. Indeed, Plaintiffs lay bare the fact that their entire theory is based upon the fact that Daimler "directed and acted through its wholly-owned subsidiary, MBUSA" and, on that basis, pleads facts denoting that "MBUSA was Daimler's agent for purposes of marketing, sales, warranty claims and customer relationships" and that because "the Complaint plausibly alleges that Daimler controlled and directed MBUSA's actions with respect to the defective Class Vehicles at all relevant times, Daimler cannot now claim that it is unable to discern the basis of the claims against it." Pls.' Opp'n at 2-4; Compl. ¶¶ 38-46.
Daimler appears to invite the Court-within the context of its "shotgun" pleading argument-to engage in a full-blown analysis as to whether an agency relationship exists between Daimler and MBUSA such that Daimler can be held liable for the acts of MBUSA, its wholly-owned subsidiary, or at minimum resolve whether Plaintiffs' allegations of agency are adequately pleaded, Def.'s Reply at 4-9. However, this issue is neither squarely before the Court (as Defendant has not sought dismissal specifically as to this ground) nor has it been sufficiently briefed by Daimler such that the Court would be in a position to issue a ruling concerning this issue. Nevertheless, solely for purposes of addressing Daimler's "shotgun" pleading attack (i.e. , that the lumping together of Daimler and MBUSA fails to place Daimler on notice of the facts and claims being directed at it alone) the Court assumes, without deciding, that Plaintiffs' allegations pertaining to agency are sufficient at the pleading stage given the unique factual circumstances present here. See Compl. ¶¶ 38-46. To be sure, the Court finds it improbable that Plaintiffs' agency allegations could have been pleaded with further specificity at this stage without the benefit of discovery since the factual information setting forth Daimler's corporate structure and its relationship to MBUSA as well as whether sufficient control was exercised over MBUSA by Daimler to warrant a finding that MBUSA was acting as Daimler's agent likely lies within the sole province of Daimler itself.[11] See *1353 Espinosa v. Bluemercury, Inc. , No. 16-CV-07202-JST, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017) ("The Court agrees with Plaintiff that the parent-subsidiary relationship in this case distinguishes it from the facts of Sollberger [v. Wachovia Securities, LLC, 2010 WL 2674456 (C.D.Cal. 2010) ], and that discovery will allow Plaintiff to be more specific about which Defendant did what.").[12]
In any event, even if Plaintiffs' agency allegations were insufficiently pleaded-which the Court points out involves an entirely different issue than that being interposed by Daimler in its "shotgun" pleading attack-that does not lead to the inexorable conclusion that Plaintiffs' Complaint runs afoul of Rule 8(a)(2) solely because it groups Daimler and MBUSA into a non-entity named "Mercedes." Rather, the Eleventh Circuit has held that "[t]he fact that defendants are accused collectively does not render the complaint deficient" where it "can fairly [be] read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman , 208 F.3d 940, 944 (11th Cir. 2000). In having reviewed the Complaint twice in its entirety-once in order to adjudicate MBUSA's previously filed motion to dismiss and again in preparing to adjudicate the instant motion, the Court finds that the grouping together of Daimler and MBUSA can be fairly read to allege that both Defendants, collectively, are, in Plaintiffs' view, responsible for the conduct alleged and, as such, the Complaint is not procedurally deficient on that basis.[13]
Even were the Court to find that Plaintiffs' Complaint ran afoul of Rule 8(a)(2), any such drafting issues, in the present context, simply do not rise to the level of being so egregious that the Complaint would warrant dismissal on such procedural grounds alone. See Weiland , 792 F.3d at 1325 ; Wackenhut Servs., Inc. , 2009 WL 3028308, at *2. Rather, as drafted, the Court finds the Complaint sufficiently organized and includes enough factual details to provide Daimler fair notice of the claims being lodged against it. That is all Rule 8(a)(2) requires. See Martins v. Royal Caribbean Cruises Ltd. , 174 F.Supp.3d 1345, 1358 (S.D. Fla. 2016) (no "shotgun" pleading where although "complaint does reference previously-asserted facts in each count ... complaint [wa]s organized and each count includes specific allegations unique to the claim alleged"); Perricone v. Carnival Corp. , No. 15-20309-CV, 2016 WL 1161214, at *3 (S.D. Fla. Mar. 24, 2016) (same "where the Complaint [although utilizing incorporation by reference] is [not] difficult to understand because each claim is repleaded in every count or where Plaintiff's referencing back is disorganized and incomprehensible").
*1354 Finally, even if the Court were to find Plaintiffs' Complaint contained pleading violations so egregious as to make the Complaint virtually impossible to comprehend, dismissal with prejudice would be entirely inappropriate in light of the Eleventh Circuit's directive that a court sua sponte must give Plaintiff one opportunity to replead his claims. See Vibe Micro, Inc. , 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."). In this case, such a determination and the resulting waste of resources and time that would result-since Plaintiffs would be required to recast their Complaint, refile the same, provide Daimler another opportunity to either file an Answer or burden the Court with yet another motion to dismiss which would then need to be decided by the Court-is simply not a path that need be trodden at this juncture.
While the evils associated with burdening courts with proverbial "shotgun" pleadings cannot be overstated and litigants should be mindful of the directives set forth in Rule 8(a)(2) and 10(b) when crafting pleadings, the Court laments the use of this tactic as a method to try and torpedo those pleadings, which although not models of clarity or otherwise scholarly works, are nevertheless clear enough to satisfy their intended purpose-to provide notice of the claims being asserted and the grounds upon which those claims rest. Indeed, in Craighead v. Austal USA, LLC , Judge Steele made a sage observation in this particular area that bears repeating here:
A complaint's incorporation by reference in each count of all preceding paragraphs is a disfavored drafting technique; however, for better or worse, it is also an [ ] altogether commonplace convention in pleadings filed in federal court. Typically, this practice stems from litigants endeavoring to plead their claims as broadly as possible so as to avoid constraining the universe of facts on which a given claim might rely. If the mere utilization of such an unwelcome-but-pervasive pleading device mandated that a complaint be jettisoned as a shotgun pleading, then precious few civil pleadings would survive. The defining defect in shotgun pleadings is not incorporation by reference per se , but is instead the net effect that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v District Bd. of Trustees of Cent. Florida Community College , 77 F.3d 364, 366 (11th Cir. 1996).
After careful review of Craighead's Complaint, however, the Court concludes that it may be easily discerned which factual allegations support which claims. For that reason, the Complaint will not be dismissed as a shotgun pleading merely because of the incorporation-by-reference language.
The same conclusion attaches to Ameri-Force's objection that in certain places the Complaint refers to "Defendants" generically, rather than specifying which defendant is alleged to have done what. From reviewing the Complaint as a whole, the Court finds no realistic likelihood that Ameri-Force will be confused or unable "to decipher with reasonable specificity which acts or omissions are alleged against it." (Doc. 11, at 18.) Simply put, these particular flaws are not so pervasive as to deprive Ameri-Force of adequate notice of the claims against it or the grounds upon which each claim rests; therefore, dismissal is not warranted on those grounds.
*1355 Craighead v. Austal USA, LLC , No. CV 17-0445-WS-MU, 2017 WL 6559917, at *2 (S.D. Ala. Dec. 21, 2017).
In light of the foregoing analysis, Daimler's motion seeking to dismiss Plaintiffs' Complaint as a "shotgun" pleading is DENIED .
C. Whether Plaintiffs' Implied Warranty Claim Fails Due to Lack of Privity
Daimler challenges the legal sufficiency of Plaintiffs' implied warranty claim on privity grounds. Def.'s Mem. at 11-14. Specifically, Daimler maintains that "[b]ecause [it] did not extend a written warranty to Plaintiffs, and there is no other allegation purporting to bridge the privity gap, Plaintiffs' implied warranty claims fail as a matter of law." Id. at 14.
In response, Plaintiffs assert that Daimler's position "ignores Plaintiffs' well-pleaded agency allegations that MBUSA operated as Daimler's agent for purposes of warranties." Pls.' Opp'n at 19. Specifically, Plaintiffs' contend that "Daimler is in privity with Plaintiffs for purposes of pleading an implied warranty claim because its agent, MBUSA, issued an implied warranty to Plaintiffs within the scope of the authority delegated to MBUSA by Daimler" and that "Daimler controlled all aspects of the warranty process, merely delegating administrative duties to MBUSA." Id. at 20-21.
In its Reply, Daimler reiterates its privity argument with citation to one Northern District of Georgia decision[14] while also pointing out that "Plaintiffs have [not] pointed to [any] Georgia authority holding that a breach of implied warranty claim is cognizable against a defendant based solely on allegations of an agency relationship." Def.'s Reply at 9-11.
1. Applicable Law
Pursuant to Georgia law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314. Notwithstanding that such a contract exists by implication, "[a]s this warranty clearly arises out of a contract of sale of goods, it can only run to a buyer who is in privity of contract with the seller." Chaffin v. Atlanta Coca Cola Bottling Co. , 127 Ga. App. 619, 619, 194 S.E.2d 513, 515 (1972) ; McQueen v. Minolta Bus. Sols., Inc. , 275 Ga. App. 297, 300, 620 S.E.2d 391, 393 (2005) ; Whitehead v. John Bleakley RV Ctr., Inc. , No. 109-CV-468, 2010 WL 925091, at *7 (N.D. Ga. Mar. 8, 2010). It follows that "when a buyer purchases a product from a retailer, and there is no privity of contract between the manufacturer and the buyer, no implied warranty runs from the manufacturer to the purchaser." McQueen , 275 Ga. App. at 300, 620 S.E.2d at 393 ; see Monticello v. Winnebago Indus., Inc. , 369 F.Supp.2d 1350, 1361 (N.D. Ga. 2005) ("Because Plaintiff is not in privity with Defendants, Plaintiff may not maintain a cause of action against them for breach of the implied warranty of merchantability.").
2. Analysis
While Plaintiffs have not pleaded a vertical relationship between themselves and Daimler that would give rise to the requisite privity in the traditional sense, they argue that the necessary privity has been sufficiently alleged in light of the Complaint's agency allegations. Pls.' Opp'n at 19-21; Compl. ¶¶ 38-46. Daimler retorts that Plaintiffs' have not pointed to any Georgia case law that permits a finding of privity based "solely on allegations of an agency relationship" and that Plaintiffs *1356 have therefore failed to plead this necessary element of their breach of implied warranty claim. Def.'s Reply at 10.
Initially, Daimler's assertion that Plaintiffs' lack of citation to binding Georgia authority in itself precludes a finding that the Complaint, based upon its agency allegations, adequately pleads an agency relationship giving rise to the necessary privity as between themselves and Daimler is unpersuasive. Indeed, Daimler, for its part, has not apprised the Court of any Georgia case law that prohibits a preliminary finding of privity based upon an agency theory.
Although neither party's briefing on this question proved particularly helpful, the Court has conducted its own independent research on the issue and has found that a number of district courts applying Florida law have determined that an agency relationship can itself satisfy the privity requirement, so long as such allegations are sufficiently pleaded. See T.C. Webb Transp. v. Freightliner, LLC , No. 809 CV 01153T23, 2009 WL 10670576, at *2 (M.D. Fla. Sept. 3, 2009) ("[I]f the plaintiff shows the existence of an agency between a dealer and a manufacturer, the agency satisfies the privity requirement for an implied warranty."); Bland v. Freightliner , 206 F.Supp.2d 1202 (M.D. Fla. 2002) (recognizing that privity may exist between a manufacturer of vehicle and purchaser even though vehicle was not purchased directly from manufacturer, but instead from a dealer alleged to be the manufacturer's agent); Lebel v. Rampage Sport Fishing Yachts , No. 06-61890, 2007 WL 1724942, at *3 (S.D. Fla. June 14, 2007) (recognizing that agency theory could establish necessary privity but finding that summary judgment as to this issue was inappropriate since "the question of whether an agency, in fact, existed ... remains in dispute"); Henson v. Allison Transmission , No. 07-80382-CIV, 2008 WL 239153, at *3 (S.D. Fla. Jan. 28, 2008) (finding allegations of agency relationship sufficient to allege requisite privity between manufacturer and purchaser but concluding at summary judgment stage that plaintiff had provided "no [ ] evidence of the agency relationship that it alleged" and on that basis found that plaintiff's "breach of implied warranty claim must fail"); Speier-Roche v. Volkswagen Grp. of Am. Inc. , No. 14-20107-CIV, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) (recognizing that sufficiently pleading existence of agency relationship would satisfy the privity requirement at the pleading stage but concluding that the "Amended Complaint makes no allegation of either contractual privity or a genuine agency relationship" and that as such, "Plaintiff's allegation [for breach of implied warranty] [wa]s insufficient").
While the Court acknowledges that the instant dispute is governed by Georgia law, the privity requirement necessary to adequately plead a breach of warranty claim is a sine qua non under both Georgia as well as Florida law. Compare Chaffin , 127 Ga. App. at 619, 194 S.E.2d at 515 (setting forth privity requirement for breach of warranty claims) with Kramer v. Piper Aircraft Corp. , 520 So.2d 37, 39 n. 4 (Fla. 1988) (recognizing that "[t]he implied warranty cause of action remains unaltered where privity of contract exists...."). In light of this inescapable fact and in the absence of binding or persuasive Georgia authority stating that an agency relationship can never provide a basis for the necessary privity to sustain a breach of implied warranty claim by a downstream purchaser, the Court finds that such a theory, if adequately pleaded, would be sufficient to survive a motion to dismiss based solely upon privity grounds.
The resulting inquiry involves answering two questions: (1) what constitutes an *1357 agency relationship under Georgia law and (2) are Plaintiffs' agency allegations sufficiently pleaded pursuant to Georgia law.
As concerns question (1), under Georgia law
an agency relationship is created wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf. Thus, it is the actions of the principal that create an agency relationship.
To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results in conformity to the contract. The right to control the purported agent's time means the right to control the hours of work. The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.
Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc. , 283 Ga. App. 711, 712-13, 642 S.E.2d 364, 365 (2007). Significantly, "[t]he existence of agency and the extent of the agent's authority are questions of fact." S. Exposition Mgmt. Co. v. Genmar Indus., Inc. , 250 Ga. App. 702, 704, 551 S.E.2d 830, 832 (2001) ; Johnson St. Properties, LLC v. Clure , 302 Ga. 51, 55, 805 S.E.2d 60, 66 (2017) ("Typically, [q]uestions of the existence and extent of an agent's authority are generally for the triers of fact.") (alteration in original); Renfroe v. Warren-Hawkins Am. Legion Post No. 523 , 157 Ga. App. 614, 614, 278 S.E.2d 414, 414 (1981) ("Questions regarding the existence of agency and the extent of the agent's authority are generally for the trier of fact.").
Turning to the sufficiency of Plaintiffs' agency allegations, the Complaint pleads the following concerning the depth and breadth of Daimler's purported control over MBUSA's actions in the United States:
Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of the Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect. Daimler has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Class Member complaints regarding the HVAC System Defect.
Compl. ¶ 44; see also id. ¶ 45 (setting forth how Daimler held out MBUSA as its agent). While these allegations are admittedly somewhat vague and could benefit from the inclusion of additional factual information, the quality and quantity of facts required to amplify the element of "control" likely lie within the sole possession of Daimler and hence, without adequate discovery, it is unlikely Plaintiffs would be able to plead their agency allegations with further specificity. In any event, given that the existence of an agency relationship generally involves questions of fact ill-suited to a decision at the motion to dismiss stage, coupled with the fact that under notice pleading rules the inclusion of "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Erickson v. Pardus , 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotations and citations omitted), the Court finds that Plaintiffs' allegations are *1358 sufficient, albeit barely, to allege an agency relationship as between Daimler and MBUSA and thus establish the necessary privity at this stage of the litigation.
In light of the foregoing analysis, Daimler's motion to dismiss Plaintiffs' claim sounding in breach of the implied warranty of merchantability is DENIED . However, the Court clarifies that although Plaintiffs' allegation has survived the pleading stage, in order to prove the existence of an agency relationship, Plaintiffs will have to come forward with the requisite quality and quantum of evidence, both at summary judgment and at trial, establishing that Daimler exercised a sufficient amount of control over the manner and means of MBUSA's work. See Satisfaction & Serv. Hous., Inc. , 283 Ga. App. at 712-13, 642 S.E.2d at 365. The Court holds only that Plaintiffs be given the opportunity to do so.
D. Whether Plaintiffs' Georgia Fair Business Practices Act ("GFBPA") Claim Fails Due to the Lack of Actual Reliance on Representations Made by Daimler
Turning to Plaintiffs' GFBPA claim, Daimler asserts that this claim is not viable as against it (as opposed to MBUSA) since "Plaintiffs do not allege that Daimler [ ] made any representations or omissions at all." Def.'s Mem. at 15. In addition, in a footnote, Daimler all but dismisses any possibility that Plaintiffs' agency theory saves this claim. See id. n. 5.
In response, Plaintiffs initially point out (correctly) that the Court "previously held that Plaintiffs plausibly alleged justifiable reliance on statements by MBUSA" and, partially on that basis, upheld the viability of their GFBPA claim. Pls.' Opp'n at 22 (citing Doc. 30). Thus, Plaintiffs' argument in support of the sufficiency of this claim as to Daimler rests entirely on their claim that "an agency relationship exists between Daimler and MBUSA in which Daimler is entitled to direct and control MBUSA's actions and statements...." Id. at 23 (citing Compl. ¶¶ 44-45). In addition, according to Plaintiffs, "MBUSA's statements, concealments, and actions in connection with vehicle repair and servicing that form the basis of these previously upheld claims fall within the scope of the principal-agent relationship between Daimler and MBUSA." Id. at 24.
Initially, the Court points out that it has, in its prior Order, set forth the elements necessary to plausibly allege a claim arising under the GFBPA[15] and will not do so again here. See the March 13, 2018 Order (the "Order") at 21. Likewise, at least as to MBUSA, the Court has previously determined that
In light of all of these allegations, Plaintiffs have plausibly alleged that Mercedes knew of but failed to disclose a material defect in the Class Vehicles. Plaintiffs have further plausibly alleged that in an effort to address the defect, they "repeatedly confront[ed] [Mercedes] with the apparent falsity of its representations, and [Mercedes] repeatedly confirm[ed] its original statement, asserting special knowledge ...."
*1359 DeLong Equip. Co. [v. Washington Mills Abrasive Co.] , 887 F.2d [1499,] at 1519-20 [ (11th Cir. 1989) ]. Therefore, Plaintiffs' have plausibly alleged justifiable reliance.
Id. at 24. As such, in light of Daimler's limited challenge, the only question at this stage is whether Plaintiffs' allegations of justifiable reliance with respect to MBUSA, (which the Court has already found sufficient to withstand a Rule 12(b)(6) challenge), can be, based upon the facts alleged, imputed to Daimler under an agency theory such that Daimler may be held responsible for the actions and/or omissions of MBUSA relating to the material defect existing in the Class Vehicles' HVAC Systems.
Having reviewed the factual allegations underlying Plaintiffs' claims of justifiable reliance as to MBUSA, see Compl. ¶¶ 75-127; Order at 21-24 (highlighting applicable factual information underlying justifiable reliance), and in light of Plaintiffs' agency allegations, Compl. ¶¶ 38-46, which the Court has found have been adequately pleaded, see supra at 1357-58, the Court concludes such facts are sufficient at this stage to impute MBUSA's actions and/or omissions concerning vehicle repair and servicing to Daimler. See Certain Underwriters at Lloyd's London v. Witham , 139 F.Supp.3d 1367, 1375 (M.D. Ga. 2015) ("Where an agency relationship does exist, an agent's knowledge is imputed to the principal pursuant to Georgia law.") (citing Graphic Arts Mut. Ins. Co. v. Pritchett , 220 Ga. App. 430, 431, 469 S.E.2d 199, 201 (1995) ); Roylston v. Bank of Am., N.A. , 290 Ga. App. 556, 560, 660 S.E.2d 412, 417 (2008) ("The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it[.]").
Similar to their breach of implied warranty claim, although the Court finds that Plaintiffs' pleading has survived a Rule 12(b)(6) challenge as to the GFBPA claim based upon an agency theory, whether this claim ultimately survives as to Daimler is entirely dependent on whether Plaintiffs can come forward with sufficient evidence to establish that an agency relationship in fact existed as between Daimler and MBUSA. Without this factual nexus, Plaintiffs' GFBPA claim as to Daimler (as well as the balance of their claims against Daimler grounded upon an agency theory) will fail as a matter of law.
E. Whether Plaintiffs' Fraudulent Concealment Claim Remains Viable in the Event Daimler Did Not Possess a Duty to Disclose
As to Plaintiffs' fraudulent concealment claim, Daimler asserts that although the Court previously found a duty to disclose as concerns MBUSA, "any duty MBUSA allegedly had does not automatically extend to Daimler [ ], which ... is further removed from Plaintiffs and other consumers on the distribution chain." Def.'s Mem. at 17. In addition, Daimler states that Plaintiffs' have not pleaded any allegations that they "had any contact with Daimler [ ], engaged in any transaction with Daimler [ ], entered into a sales contract with Daimler [ ], had any other relationship whatsoever with Daimler [ ], or that Daimler [ ] was even aware of their purchase...." Id. In response, Plaintiffs essentially rely on their agency allegations in order to impute the alleged fraudulent concealment purportedly engaged in by MBUSA to Daimler. Pls.' Opp'n at 22-24.
As with Plaintiffs' GFBPA claim, the Court has, in its prior Order, set forth the requirements necessary to sufficiently *1360 plead a fraudulent concealment claim and will not do so again here. See Order at 35-36.
Initially, as to MBUSA, the Court previously determined that
Plaintiffs have alleged that (1) Mercedes knew about the defect as early as 2008; (2) Mercedes denied the existence of the defect when confronted about it by consumers; and (3) Mercedes actively concealed this defect. (See , e.g. , Compl., Doc. 1 ¶¶ 75, 84, 118, 127.) Thus, as stated above, Plaintiffs have plausibly alleged that Mercedes concealed an intrinsic quality of the Class Vehicles that Plaintiffs and consumers generally could not have discovered in the exercise of reasonable care. In light of these allegations, the particular circumstances of this case support a finding that Plaintiffs have plausibly alleged justifiable reliance. Under these circumstances, Plaintiffs have plausibly alleged that Mercedes had an obligation under Georgia law to disclose the defective HVAC system and failed to do so. Accordingly, Plaintiffs have stated a claim for fraudulent concealment[.]
Id. at 36-37. Thus, if these actions can be imputed to Daimler under an agency theory, Daimler's motion to dismiss as to this claim must be denied. As to this point, the Court finds its reasoning, based upon the same allegations which underlie Plaintiffs' GFBPA claim to be equally applicable here. See supra at ---- - ----. On that basis, the Court concludes that Plaintiffs' allegations sufficiently impute MBUSA's actions and/or omissions concerning vehicle repair and servicing to Daimler thus creating the required factual connection at this stage.
Daimler cites Moore v. Meeks for the proposition that a defendant who was not a party to a sales contract and who did not otherwise have any knowledge of the sale was under no duty to disclose to plaintiff the defect, see Moore v. Meeks , 225 Ga. App. 287, 287, 483 S.E.2d 383, 384 (1997) (fraudulent omission claim failed "[a]s Meeks was not a party to the contract and Moore does not allege that Meeks had any knowledge of the sale, he cannot claim Meeks was under a duty to disclose to him the defect"). The Court finds this case inapposite in light of the agency theory present here. Indeed, Moore made no mention that the plaintiff in that case put forth an agency theory nor analyzed whether, if an agency theory had been pleaded, any knowledge of the contract, sale and defect could have otherwise been imputed to defendant. As such, this case does little to assist Daimler in the present context.
In sum, in light of the fact that Plaintiffs have plausibly alleged a claim of fraudulent concealment as against MBUSA and as the facts underlying this claim can, at least for purposes of this motion, be imputed to Daimler based upon the Plaintiffs' allegations of an agency relationship, Daimler's motion seeking to dismiss this claim is DENIED .
F. Whether Plaintiffs' Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") Fails Due to the Lack of an Ongoing Relationship with Daimler
In attempting to dismiss Plaintiffs' GUDTPA claim,[16] Daimler interposes an argument similar to that put forth in its attempts to dismiss Plaintiffs' GFBPA and fraudulent concealment claims. See Def.'s Mem. at 19 (arguing that Plaintiffs' allegations are "insufficient to allege ongoing *1361 harm as to Daimler [ ], because Plaintiffs do not allege that Daimler [ ]-as distinguished from MBUSA-was involved with servicing their vehicles").
The Court has previously found that Plaintiffs have plausibly alleged a viable claim under the GUDTPA with respect to their allegations that "they must periodically take their vehicles for service regarding the defect and that Mercedes (1) denies the existence of the defect and (2) charges Plaintiffs for non-permanent solutions. Plaintiffs argue that they have alleged harm that is both ongoing and will likely occur in the future." Order at 32-33. Specifically, Plaintiffs alleged that "the denial of the defect by Mercedes and the regular, periodic charging of Class Members for temporary 'band-aid' fixes - flushing the system and changing the air filters - are deceptive trade practices." (citing Compl. ¶ 7). Based upon these allegations the Court determined that
Plaintiffs have plausibly alleged that they are "likely to be damaged by [this] deceptive trade practice." O.C.G.A. § 10-1-373(a). This is because Plaintiffs have alleged that when they brought their vehicles to Mercedes for service related to the defect, Mercedes represented that the Class Vehicles were defect-free and possessed a certain quality with respect to the HVAC Systems - namely, the quality of being free from the specific defect alleged. Unlike Plaintiffs' other allegations, these concern both ongoing and future harm of the type contemplated by O.C.G.A. § 10-1-373.
Order at 33.
Thus, Daimler posits that "Plaintiffs have not plausibly alleged that they will suffer any ongoing or future harm as a result of any conduct of Daimler [ ], [and that] their GUDTPA against Daimler [ ] must be dismissed." Id. But this line of attack completely ignores Plaintiffs' agency theory, which the Court has already found to be adequately pleaded and which would serve to impute MBUSA's knowledge, actions and any resulting future harm to that of Daimler as the alleged principal. See Kissun , 267 Ga. at 421, 479 S.E.2d at 754 ("[T]he mere fact that one corporation is a subsidiary of another does not alone serve to insulate the parent where the evidence can establish the legal requirements of an actual or apparent agency relationship between the two corporations."); Gutter v. E.I. Dupont De Nemours , 124 F.Supp.2d 1291, 1309 (S.D. Fla. 2000) ("Generally, 'a corporation (principal) will be vicariously responsible for the wrongful acts of its employees (agents) when the acts are: (1) related to and committed within the course of employment; (2) committed in furtherance [of the business] of the corporation; and (3) authorized or subsequently acquiesced in by the corporation.' ") (citing Cox v. Administrator United States Steel & Carnegie , 17 F.3d 1386, 1406-07 (11th Cir. 1994) ). As such, the same conclusion the Court has previously reached with respect to Plaintiffs' other claims, which have been similarly attacked by Daimler, applies with equal force here-thus, the Court finds dismissal of Plaintiffs' GUDTPA claim as to Daimler to be premature. Rather, Daimler will have the chance following discovery to seek dismissal of this (as well as Plaintiffs' other claims lodged against Daimler based solely on an agency theory) at the summary judgment stage should it choose to do so.
Based upon the foregoing analysis, Daimler's motion to dismiss Plaintiffs' GUDTPA claim is DENIED .
G. Whether Plaintiffs' Unjust Enrichment Claim Fails Due to the Lack of a Conferral of a Benefit on Daimler
Turning finally to Plaintiffs' Unjust Enrichment claim, Daimler petitions for dismissal of this cause of action primarily *1362 based upon the fact that "any allegation that Plaintiffs conferred a benefit on 'Mercedes' is insufficient to allege that Plaintiffs conferred a benefit directly on Daimler [ ], as distinguished from MBUSA-especially given that Plaintiffs do not allege any direct interactions or other relationship with Daimler [ ]." Def.'s Mem. at 21. In addition, Daimler maintains that "even if Plaintiff had alleged that they conferred a direct benefit on Daimler [ ], they have not alleged facts showing that Daimler [ ] knew of the benefit ... and either affirmatively chose to accept [it] or failed to reject it." Id. (internal citation omitted) (alteration in original).
Plaintiffs, as with the prior claims made against Daimler, primarily asserts that the allegations giving rise to their claim of unjust enrichment, see Compl. ¶¶ 251-254, is sufficiently pleaded since "[t]hese allegations set forth a claim that Daimler was unjustly enriched directly and through the actions of its agent MBUSA." Pls.' Opp'n at 24-25.
1. Applicable Law
"Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." Bolinger v. First Multiple Listing Serv., Inc. , 838 F.Supp.2d 1340, 1366 (N.D. Ga. 2012) : ( St. Paul Mercury Ins. Co. v. Meeks, et al. , 270 Ga. 136, 508 S.E.2d 646, 648 (1998) ); see Sitterli v. Csachi , 344 Ga. App. 671, 673, 811 S.E.2d 454, 457 (2018) (same). In order to adequately state a claim for unjust enrichment,
a plaintiff [must] assert[ ] that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.
Campbell v. Ailion , 338 Ga. App. 382, 387, 790 S.E.2d 68, 73 (2016). It follows that the "essential elements of the claim of unjust enrichment, under Georgia law, are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." Chartis Ins. Co. of Canada v. Freeman , No. CV 111-193, 2013 WL 12121864, at *6 (S.D. Ga. Mar. 18, 2013). Significantly, "to maintain an action for unjust enrichment, it is not necessary that the plaintiff allege a direct payment by the plaintiff to the allegedly unjustly-enriched defendant." Bolinger , 838 F.Supp.2d at 1367 n. 27 (citing Haugabook v. Crisler , 297 Ga. App. 428, 432, 677 S.E.2d 355, 359 (2009) ); see In re Takata Airbag Prod. Liab. Litig. , 255 F.Supp.3d 1241, 1260 (S.D. Fla. 2017) (finding benefit conferred to vehicle manufacturer even where plaintiffs "purchas[ed] their vehicles directly from a Honda [retail] dealership"); Hill v. Hoover Co. , 899 F.Supp.2d 1259, 1268-69 (N.D. Fla. 2012) (finding that although plaintiff purchased product from Wal-Mart, a downstream retailer, plaintiff nevertheless "sufficiently alleged that she has conferred a benefit upon the [Hoover Company] by purchasing the Steam Vac manufactured by the [Hoover Company] for a retail price of over two-hundred dollars.").
2. Analysis
In support of their unjust enrichment claim, Plaintiffs assert the following facts:
251. Mercedes has been unjustly enriched by the Plaintiffs and Class Members through Plaintiffs' and Class Members' purchasing and/or leasing Class *1363 Vehicles from Mercedes and purchasing replacement parts and service from Mercedes that Plaintiffs and Class Members would not have purchased but for the HVAC System Defect and Mercedes's concealment of the same.
252. Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the defective nature of its Class Vehicles' HVAC Systems and the resultant moldy odor problems, but failed to disclose this knowledge and misled Plaintiffs and the Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.
253. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of revenue that it unfairly obtained from Plaintiffs and Class Members. This revenue include the premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of the parts and service bought from Mercedes used to temporarily alleviate the moldy odor emitted by the HVAC Systems.
254. Plaintiffs and the other members of the Class, having been damaged by Mercedes's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Mercedes to their detriment.
Compl. ¶¶ 251-254.
In light of the above facts, which, similar to Plaintiffs' other substantive claims, are based upon an agency theory of liability, see Pls.' Opp'n at 25 (such theory having been plausibly pleaded at this stage, see supra at 1357-58), the Court finds Plaintiffs have pleaded sufficient facts to state a claim for unjust enrichment. Specifically, Plaintiffs have pleaded (1) conferral of a benefit upon Daimler (i.e. , purchase and/or lease of Class Vehicles and purchase of parts and service); (2) that Daimler had knowledge of the benefit via the purported agency relationship (i.e. , since Daimler, as the alleged principal, "was aware of the defective nature of its Class Vehicles' HVAC Systems and the resultant moldy odor problems, but failed to disclose this knowledge and misled Plaintiffs ... regarding the nature and quality of the ... Class Vehicles while profiting from this deception") and (3) that Daimler's retention of the benefit (i.e. , "revenue" including "the premium price Plaintiffs ... paid for the Class Vehicles and the cost of the parts and service bought [from Daimler and] used to temporarily alleviate the moldy odor emitted by the HVAC System") would, under the above circumstances, be unjust.
While Daimler attempts to attack Plaintiffs' allegations based upon the fact that no direct benefit has been conferred, the Court finds this argument without merit since the conferral of direct benefit as opposed to indirect benefit is not required to adequately plead a cause of action sounding in unjust enrichment. See Bolinger , 838 F.Supp.2d at 1367 ; Hill , 899 F.Supp.2d at 1268-69. In addition, while Daimler also attempts to impugn the sufficiency of this claim based upon the assertion that Daimler had no knowledge of the benefit, this argument fails for two reasons: (1) taking as true Plaintiffs' allegations of agency, any knowledge of the benefit, even if conferred directly on MBUSA, would nevertheless be imputed to Daimler as the principal; and, in any event (2) the nature and extent of Daimler's knowledge, in this regard, requires a factual inquiry that is not ripe for adjudication at this stage of the litigation.
At this point in the litigation, the Court takes Plaintiffs' well-pleaded allegations as true and draws all reasonable inferences in their favor. Having done so, and in light of the foregoing analysis, the Court finds Plaintiffs have sufficiently pleaded a claim *1364 for unjust enrichment and Daimler's motion to dismiss is therefore DENIED . As stated previously, whether Plaintiffs can come forward with sufficient evidence to prove up this claim is another matter. The Court holds only that they be given the chance to do so.
V. CONCLUSION
For the foregoing reasons Defendant's Motion to Dismiss [Doc. 41] is DENIED in its entirety. In light of the Court's determination, Daimler is directed to file its Answer to Plaintiffs' Complaint by January 7, 2019. In addition, the parties are directed to engage in the required Rule 26(f) conference by January 11, 2019 and file the required Joint Preliminary Report and Discovery Plan not later than January 18, 2019. Further, the Court directs the parties to appear for a telephonic status conference on January 25, 2019 at 10:30 AM in order to apprise the Court as to discovery issues and management of class certification issues.
IT IS SO ORDERED this 18th day of December, 2018.

Mercedes Benz , lyrics and music by Janis Joplin.

According to the Complaint, "[t]he vehicles at issue in this action include the 2004-2012 Mercedes A-Class, 2001-2017 Mercedes C-Class, 2000-2014 Mercedes CL-Class, 2013-2017 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2017 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2017 Mercedes GLClass, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2017 Mercedes GLE-Class, 2006-2015 Mercedes R-Class, 1999-2017 Mercedes SClass, 2003-2012 Mercedes SL-Class, 2004-2016 Mercedes SLK-Class, and 2002-2013 Maybach 57 and 62. Compl., ¶ 2.

Daimler did not join in MBUSA's motion to dismiss since, at the time the same was filed, Plaintiffs had not yet effected proper service upon Daimler. (Doc. 30 at 2 n. 2).

In addition, to Counts V-IX, which Daimler now seeks to have dismissed by means of the instant motion, MBUSA previously requested dismissal of Counts I-IV which had been interposed solely as against MBUSA. See Compl. Counts I-IV (consisting of the following claims, respectively: Breach of Express Warranty, Breach of Express Warranty under the Magnuson-Moss Act, Breach of Implied Warranty and Breach of Implied Warranty under the Magnuson-Moss Act).

To the extent the reasoning and analysis contained in the Court's prior Order is relevant in adjudicating the issues contained in the instant motion, those relevant portions will be discussed, as necessary, in tandem with the Court's analysis. To the extent the reader seeks a more complete review of the Court's prior Order at the outset, he or she is respectfully directed to the Order itself. (Doc. 30).

All facts alleged by the Plaintiffs are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to the Plaintiffs as the non-moving party. See Dusek v. JPMorgan Chase & Co. , 832 F.3d 1243, 1246 (11th Cir. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2326, 198 L.Ed.2d 755 (2017) ; Am. Dental Ass'n v. Cigna Corp. , 605 F.3d 1283, 1288 (11th Cir. 2010).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.' " Weiland v. Palm Beach Cty. Sheriff's Office , 792 F.3d 1313, 1320 (11th Cir. 2015).

Notwithstanding Daimler's assertion that Plaintiffs have pleaded "fraud-based claims," the Complaint only consists of a single cause of action that requires application of Rule 9(b)'s heightened pleading standard-the claim of fraudulent concealment. Indeed, this Court has previously determined that Plaintiffs' claim pursuant to the GFBPA is not subject to Rule 9(b)'s heightened pleading standard. See In re Arby's Restaurant Group Litigation. , No. 1:17-cv-0514, 2018 WL 2128441, at *21 (N.D. Ga. Mar. 5, 2018). Daimler begrudgingly concedes as much in its brief, citing to this Court's decision but "respectfully disagree[ing]" with it. Def.'s Mem. at 9 n. 3.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that "[a] pleading which states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 10(b) of the Federal Rules of Civil Procedure states, in pertinent part, that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

As concerns the relationship between a parent and its subsidiary, which is a function of state law, the Georgia Supreme Court has opined that "[t]here is no question that under appropriate circumstances a parent corporation can set up a subsidiary to promote the parent's purposes yet maintain a separate identity from the subsidiary and avoid liability for the subsidiary's actions. A parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent, or as the parent's actual or apparent agent. However, the mere fact that one corporation is a subsidiary of another does not alone serve to insulate the parent where the evidence can establish the legal requirements of an actual or apparent agency relationship between the two corporations." Kissun v. Humana, Inc. , 267 Ga. 419, 421, 479 S.E.2d 751, 753-54 (1997).

The Court points out that in the parallel Bhatt case the court, in adjudicating a motion to strike and dismiss the amended complaint (containing similar claims to those at issue here) found that "[a]ccepting the allegations as true, Bhatt and Blasco sufficiently alleged that MBUSA was Daimler's agent for distribution and warranties." Bhatt , 16-cv-3171 (C.D. Cal. April 16, 2018) (Slip Op. at 4).

The Court, for similar reasons, finds no merit in Daimler's "shotgun" challenge based upon Plaintiffs' use of incorporation language in each of the Complaint's Nine Counts.

McCabe v. Daimler AG , 948 F.Supp.2d 1347 (N.D. Ga. 2013)

The GFBPA states that "[u]fair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.C.G.A. § 10-1-393 ; see also id. § 10-1-391(a) (stating that "[t]he purpose of this part shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be liberally construed and applied to promote its underlying purposes and policies.").

The GUDTPA makes certain conduct, when taken "in the course of [a person's] business, vocation or occupation" actionable as a "deceptive trade practice." O.C.G.A. § 10-1-372.